MOURAD v AUTOMOBILE CLUB INSURANCE ASSOCIATION

Docket No. 109985. Submitted April 11, 1990, at Detroit. Decided
    January 8, 1991, at 9:35 A.M.

Roger Mourad, after he was demoted from head of the legal
    department to executive attorney, brought an action in the
    Wayne Circuit Court against the Automobile Club Insurance
    Association, his former employer, and three of its employees,
    alleging breach of an employment contract providing for termi-
    nation for just cause only, retaliatory demotion and construc-
    tive discharge, intentional infliction of emotional distress, and
    conspiracy. The court, Henry J. Szymanski, J., entered judg-
    ment consistent with a jury verdict awarding the plaintiff
    compensatory damages for breach of contract and retaliatory
    demotion and exemplary damages for retaliatory demotion, but
    overturned an award of exemplary damages for intentional
    infliction of emotional distress. The defendants appealed. The
    plaintiff cross appealed.

    The Court of Appeals *held:*

    The plaintiff can maintain a cause of action against Auto
    Club for breach of a contract providing termination for just
    cause only as a result of retaliatory demotion and constructive
    discharge. However, because the cause of action for retaliatory
    demotion and constructive discharge merges with the breach of
    contract claim, that award must be set aside. Damages for
    intentional infliction of emotional distress are not recoverable
    in an action for breach of an employment contract.

    1. The jury did not err in finding that there was a contract
    providing termination of employment for just cause only and
    that the defendants breached the contract when they construc-
    tively discharged the plaintiff by demoting him for his failure
    to take action which he claimed would have violated the Code
    of Professional Responsibility. Accordingly, the trial court did

REFERENCES
Am Jur 2d, Damages § 118; Master and Servant §§ 44, 62, 63.
See the Index to Annotations under Attorney or Assistance of
    Attorney; Discharge from Employment or Office; Emotional In-
    jury.

not err in denying the defendants' motion for a directed verdict regarding the claim of constructive discharge.

2. The plaintiff's breach of contract claim is not precluded by the general rule that an attorney's client has a right to discharge an attorney at any time, with or without cause. The plaintiff's relationship with the defendants was more than merely that of attorney and client.

3. The plaintiff cannot properly recover damages for breach of contract and retaliatory demotion and discharge because each cause of action is an alternative type of wrongful discharge. Thus, the award of damages for retaliatory demotion must be vacated.

4. The trial court erred in instructing the jury with regard to the availability and adequacy of defendants' internal appeal procedures upon the plaintiff's demotion inasmuch as the defendants did not assert that the plaintiff was precluded from maintaining his action because an internal appeal procedure was available. The error, however, does not require reversal because the verdict was consistent with substantial justice.

5. Damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract. The trial court erred in submitting the claim of intentional infliction of emotional distress to the jury, but properly refused to grant judgment with regard to the jury's award of exemplary damages for intentional infliction of emotional distress.

6. The trial judge, an Auto Club policyholder, did not abuse his discretion in failing to disqualify himself as an interested party. The defendants failed to show actual bias sufficient for disqualification. The trial judge's comments and questions at trial were not improper or prejudicial, nor did they deny the defendants a fair and impartial trial.

Affirmed in part, reversed in part, and remanded.

1. MASTER AND SERVANT — ATTORNEY AND CLIENT — WRONGFUL DISCHARGE.

An action for wrongful discharge by an in-house attorney against an insurer-employer, claiming breach of a just-cause employment contract was not barred by the general rule that an attorney's client has a right to discharge an attorney at any time, with or without cause, where the attorney, aside from serving as counsel for the insurer, also served as counsel for the insurer's policyholders and as administrator for the insurer.

2. MASTER AND SERVANT — TERMINATION OF EMPLOYMENT — WRONG-
   FUL DISCHARGE.
   
   A jury, having found a breach of a just-cause contract of employ-
   ment, cannot rely on the same factual basis to award additional
   damages for a claim of retaliatory demotion and retaliatory
   constructive discharge.

3. DAMAGES — EMOTIONAL DISTRESS — BREACH OF EMPLOYMENT CON-
   TRACTS.
   
   Damages for infliction of emotional distress are not recoverable in
   an action for breach of an employment contract.

*Weinstein, Gordon & Hoffman, P.C.* (by *William
J. Weinstein* and *Joel L. Hoffman*), for the plain-
tiff.

*Dykema Gossett* (by *Donald S. Young, Kathleen
McCree Lewis,* and *Suzanne Sahakian*), for the
defendants.

Before: HOLBROOK, JR., P.J. and McDONALD and
JANSEN, JJ.

JANSEN, J. Defendants appeal as of right from a
March 3, 1988, Wayne Circuit Court jury verdict
in the amount of $1,773,000 for breach of an
employment contract, demotion without cause,
constructive discharge, retaliatory demotion, inten-
tional infliction of emotional distress, and conspir-
acy. Plaintiff cross appeals the trial court's refusal
to enter an additional $500,000 in exemplary dam-
ages which the jury had awarded on a special
verdict form for intentional infliction of emotional
distress. We hold that plaintiff, an attorney, can
maintain a cause of action against defendant,
Automobile Club Insurance Association (Auto
Club), his former client and employer, for breach
of a just-cause contract. However, we reverse the
jury verdict regarding the claims of retaliatory
demotion, intentional infliction of emotional dis-

tress, and conspiracy. We therefore affirm in part and reverse in part.

In 1980, plaintiff was named legal area manager and in that capacity headed Auto Club's in-house legal department from August 1980 until March 1983 when he was demoted to an executive attorney position. Auto Club's legal department represents the insurance association in first-party cases and represents policyholders in third-party cases. The legal department attorneys supervise outside counsel and provide legal counsel and advice to Auto Club's claims staff regarding nonlitigation matters.

As legal area manager, plaintiff served as the attorney who advised management regarding the implementation of Auto Club's policies within the department. Specifically, plaintiff formulated budget requests and administered the legal department within the budget approved by Auto Club. Plaintiff also supervised the attorney staff in its representation of insureds in pending litigation. Specifically, plaintiff gave settlement authority in certain cases, dealt with personnel problems and questions from attorneys and staff, evaluated executive attorneys, and reviewed senior attorneys' evaluations of associate attorneys. Plaintiff described his function as a "managing lawyer." As legal area manager he did not directly handle individual third-party cases.

It appears that plaintiff was an excellent lawyer. However, Thomas Bowman, Auto Club's claims director and plaintiff's direct supervisor, concluded that plaintiff was unable to implement Auto Club's policies and did not have the "administrative talents" necessary to effectively implement cost-containment measures in the legal department. In September 1982, Bowman assigned defendant Leo-

nard Bach, who is not a lawyer, but who had twenty years of claims experience, to oversee the legal department. On March 16, 1983, plaintiff was removed as legal area manager and demoted to executive attorney. Plaintiff lost his use of a company car and approximately $700 in annual salary.

Following his demotion, plaintiff was an executive attorney who handled first-party catastrophic claims. On March 16, 1984, plaintiff resigned his employment with Auto Club and opened a sole practice. On July 11, 1984, plaintiff filed a complaint alleging breach of a just-cause contract, retaliatory demotion and constructive discharge, intentional infliction of emotional distress, and conspiracy to commit the tort of retaliatory demotion or intentional infliction of emotional distress. Plaintiff claimed that his demotion was the result of his refusal to comply with alleged unethical and illegal orders from the individual defendants who were not attorneys. Plaintiff further claimed that had he complied with such orders and instructions he would have violated the Code of Professional Responsibility and Canons.

On March 3, 1988, the jury returned its verdict. As compensatory damages, the jury awarded $1,250,000 as past, present, and future loss of wages and employment benefits for the breach of contract claim and $23,000 as past, present, and future loss of wages and employment benefits for the retaliatory demotion claim. For retaliatory demotion, the jury added $500,000 as compensatory damages for mental anguish. The jury also awarded $500,000 as exemplary damages for intentional infliction of emotional distress. Following an April 15, 1988, hearing, the court entered a judgment on the jury verdict, less the exemplary damages for intentional infliction of emotional distress,

which the court found inconsistent, duplicative and punitive.

Defendants argue that plaintiff cannot sustain a cause of action for wrongful termination, because plaintiff was defendants' attorney. Specifically, defendants allege that a just-cause contract as established in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980), cannot exist under these circumstances. We disagree. The issue before us is whether plaintiff can maintain an action for wrongful termination of a just-cause employment contract. In *Toussaint, supra,* our Supreme Court held that an employer's statements of company policy and procedure that an employee will be terminated only for cause can give rise to an enforceable contract right. The existence of a just-cause contract and whether defendants' actions constituted a breach of that contract is a question for the jury to determine. *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 464; 436 NW2d 389 (1988); *Struble v Lacks Industries, Inc,* 157 Mich App 169, 175; 403 NW2d 71 (1986).

Initially, we note that the jury did not err in finding that there was a just-cause contract and that defendants, by demoting plaintiff for his failure to comply with policy decisions which plaintiff claimed would have violated the code of professional conduct, breached that contract. In a special jury form, the jury found that defendants' policy manual and pamphlets had in fact created a contract to terminate for just cause. The jury also found that defendants did not have just cause to demote plaintiff and that defendants constructively discharged plaintiff by making the conditions of plaintiff's work so intolerable that plaintiff felt compelled to leave. We are unpersuaded by defendants' argument that the trial court erred in

failing to direct a verdict for defendants on the constructive discharge claim.

A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign. *Fischhaber v General Motors Corp,* 174 Mich App 450, 454-455; 436 NW2d 386 (1988).

In reviewing a trial court's ruling on a motion for a directed verdict or judgment notwithstanding the verdict, the testimony and all legitimate inferences that may be drawn from that testimony are viewed in the light most favorable to the plaintiff. *Matras v Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986). If reasonable jurors could honestly reach different conclusions, the motion should be denied, and the case should be decided by the jury, because no court under such circumstances has authority to substitute its judgment for that of the jury. *Id.; Feaheny v Caldwell,* 175 Mich App 291, 299-300; 437 NW2d 358 (1989). We hold that the trial court did not err in refusing to grant defendants' motion for a directed verdict. Evidence presented at trial indicated that plaintiff was demoted from the highest position in the legal staff to a lesser position with the resultant loss of authority and various benefits. Evidence indicated that plaintiff was essentially isolated from the operation of the law department. Further, after plaintiff's demotion, plaintiff alleged that defendants continued to make unethical requests and demands concerning plaintiff's representation of insureds. Under these facts, we find that a reasonable juror could find that plaintiff was constructively discharged.

Defendants claim that plaintiff's cause of action should be precluded by the general rule that a client has a right to discharge his attorney at any time, with or without cause. See comments to MRPC 1.16, formerly DR 2-110; *Brown v Brown,* How NP 94, 95 (Wayne CC, 1876). We disagree. In support of their position, defendants cite *Herbster v North American Co,* 150 Ill App 3d 21; 103 Ill Dec 322; 501 NE2d 343 (1986), and *Willy v Coastal Corp,* 647 F Supp 116 (SD Tex, 1986), rev'd on other grounds 855 F2d 1160 (CA 5, 1988).

In *Herbster,* the plaintiff brought suit for retaliatory discharge against his employer, North American Company, stemming from the plaintiff's refusal to destroy or remove inculpatory documents requested in lawsuits pending in federal court. The plaintiff was North American's chief legal officer and vice-president in charge of the legal department under an employment-at-will contract. In Illinois the tort of retaliatory discharge is an exception to the general rule that an employee at will has no recourse for discharge. The tort requires that the employer discharge the employee in retaliation for the employee's activities and that the discharge be in contravention of clearly mandated public policy. The Illinois court granted summary judgment for North American on the basis of the attorney-client relationship. The Illinois Court of Appeals affirmed, refusing to extend the tort of retaliatory discharge to cases involving general in-house counsel. The Illinois Court of Appeals noted that the right to terminate is a necessary aspect of the attorney-client relationship and a preventive measure against the evils created by any friction or distress between an attorney and his client.

Likewise, in *Willy,* the federal district court held that an in-house attorney is required to withdraw

from employment when a client elects to terminate the attorney-client relationship. In that case, the court granted the defendant's motion to dismiss a cause of action for wrongful termination from the plaintiff's employment as in-house counsel. The plaintiff alleged that he was fired because he required the defendant to comply with environmental laws. The *Willy* court held that the public policy exception, which creates a cause of action for retaliatory discharge in the context of an employment-at-will contract, does not apply to the termination of in-house attorneys. The *Willy* court noted that the ethical canons and the disciplinary rules set forth the standards for attorneys to follow and that they require an attorney presented with ethical conflicts to withdraw from representation. Thus, the *Willy* Court declined to extend the retaliatory discharge claim to include the wrongful termination of in-house attorneys.

However, the appeals court of New Jersey, in *Parker v M & T Chemicals, Inc,* 236 NJ Super 451; 566 A2d 215 (1989), held that the New Jersey Whistleblower's Act compels an employer to pay damages to an employee-attorney who is wrongfully discharged or mistreated for any reason which is violative of law, fraudulent, criminal, or incompatible with a clear mandate of New Jersey public policy concerning public health, safety, or welfare. *Id.* at 220. Thus, *Parker* held that the attorney-client relationship was not a bar to recovery on the basis of a retaliatory discharge claim.

We distinguish the *Willy, Herbster,* and *Parker* opinions. These cases dealt with the question whether the state will recognize a public policy exception to the typical employment-at-will contract. In the present case, the jury found a just-cause contract and a breach of that contract. The determination of the existence of a public policy

exception to an employment-at-will contract, as discussed in *Willy, Herbster,* and *Parker,* is a different inquiry from the establishment of a breach of a just-cause contract. The present case involves the creation of contractual rights by the parties, not the imposition of restrictions on employment termination on the basis of public policy grounds.

Further, we decline to adopt a complete bar to suits brought by an attorney for wrongful termination and breach of a just-cause contract on the basis of the attorney-client relationship. The general rule that a client has the right to discharge his attorney at any time, with or without cause, does not affect the present action for breach of contractual rights. Although at the time of plaintiff's demotion and constructive discharge DR 2-110 required that an attorney withdraw from employment if he knows or if it is obvious that his continued employment will result in a violation of a disciplinary rule, the present case does not simply involve an attorney-client relationship between plaintiff and Auto Club.

In many ways, plaintiff, in his relationship as supervisor of the legal staff and subsequently as supervisor over lawsuits involving catastrophic injury, was an attorney for the insureds. As such, he had a duty of loyalty and zealous representation to the insured client alone. *American Employers' Ins Co v Medical Protective Co,* 165 Mich App 657, 660; 419 NW2d 447 (1988). In this role, plaintiff's "sole loyalty and duty is owed to the client alone." *Atlanta Int'l Ins Co v Bell,* 181 Mich App 272, 274; 448 NW2d 804 (1989). The *Bell* Court summarized:

> [T]he fact remains that an insurance defense attorney represents the insured and not the insurance company. The only attorney-client relation-

ship which exists is between the attorney and the insured client. Indeed, whenever the interests of the insured and the insurance company differ, the attorney's ethical obligation is to pursue the interests of the insured client the attorney is representing and not the interests of the insurance company who pays the bill. . . . Indeed, the insurance company's relationship is, in reality, with its insured; that is, the insurance company is obligated to pay the attorney fee incurred by its insured in defending litigation covered by an applicable insurance policy. The fact that an insurance company may directly pay the attorney fee rather than merely reimbursing its insured does not affect the nature of the attorney-client relationship nor does it change the fact that the attorney represents the insured client and only owes a duty to that insured client. [*Bell, supra* at 274-275, citation omitted.]

However, it should also be noted that in some respects plaintiff's relationship with Auto Club was as counsel for Auto Club. Auto Club's legal department represented Auto Club in first-party cases, i.e., where a policyholder sues Auto Club, seeking benefits under an insurance contract. Plaintiff also acted as in-house counsel who advised management on the operation of the legal department in supervising attorneys who represented various policyholders in separate actions. Finally, we note that plaintiff was also a supervisor acting in an administrative role. In this sense, plaintiff did not have an attorney-client relationship, but was hired to administer the office. Plaintiff's role as administrator was evidenced by the fact that after plaintiff's demotion he was replaced by a nonlawyer. Clearly, plaintiff's relationship with defendants was more than merely one of attorney-client.

Under these circumstances, we hold that under

*Toussaint, supra,* defendants could have created employment rights and responsibilities, including the promise that it would not discharge plaintiff without just cause. Defendants, by hiring plaintiff as an attorney, knew or should have known that plaintiff was bound by the code of professional conduct and incorporated this fact in creating a just-cause employment contract. Although not directly bound by the code of professional conduct, defendants can agree to be bound indirectly by the code by contracting not to terminate an attorney without good cause. Therefore, we hold that plaintiff's cause of action for breach of contract under *Toussaint* is not barred by the attorney-client relationship in the present case.

In regard to plaintiff's claim for recovery under the theory of retaliatory demotion, we hold that this cause of action is an alternative theory of recovery from a breach of a just-cause contract and, therefore, cannot be sustained as an independent claim for recovery. Both causes of action arose from the same facts: plaintiff's demotion and constructive termination. The trial court instructed that the damage award for breach of a just-cause contract for the demotion and constructive discharge was to include lost wages, loss of employment, and loss of benefits, including the use of an automobile. It is clear that the trial court's damage instruction on breach of contract included the damages resulting from defendant's actions in demoting and constructively discharging plaintiff. A cause of action for retaliatory discharge is a recognized exception to the general employment-at-will contract and is based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 694-695; 316 NW2d 710 (1982). The jury,

having found the existence of a just-cause contract and a breach of that contract, cannot rely on the same factual basis to award the same damages for a claim of retaliatory demotion and retaliatory constructive discharge as an exception to an employment-at-will contract. In an analogous situation, the breach of an employment contract does not give rise to an action sounding in negligence when the breach of duty is indistinguishable from the breach of contract. *Struble, supra* at 176. We hold that a breach of a just-cause contract does not give rise to an action for retaliatory discharge where the retaliatory discharge is indistinguishable from the breach of contract.

We are further persuaded that plaintiff cannot recover under both a breach of contract claim and a retaliatory discharge claim because both claims sound in contract. An action for wrongful discharge is one mainly *ex contractu*. An action claiming retaliatory discharge is an action asserting a specific type of wrongful discharge. *Lopus v L & L Shop-Rite Inc,* 171 Mich App 486, 491; 430 NW2d 757 (1988), citing *Watassek v Dep't of Mental Health,* 143 Mich App 556, 564-565; 372 NW2d 617 (1985). Contra *Goins v Ford Motor Co,* 131 Mich App 185; 347 NW2d 184 (1983). Since the causes of action assert different types of wrongful discharge, they should be pled in the alternative. We hold that the jury verdict regarding the breach of contract prevents a finding of a retaliatory discharge. Thus, we vacate the $523,000 jury verdict for the retaliatory demotion claim. In so holding, we decline to address the issue whether an employee can bring a retaliatory discharge claim against his employer for failing to take action which is violative of the attorneys' code of professional conduct.

We also are persuaded that the claim of retalia-

tory discharge was improperly submitted to the jury in order to support a verdict for exemplary damages. Contrary to the holding of a panel of this Court in *Goins,* we follow the recent decisions in *Watassek* and *Lopus* and find that damages for mental anguish, humiliation, embarrassment, and sense of outrage or indignity are not recoverable. See *Valentine v General American Credit, Inc,* 420 Mich 256, 259; 362 NW2d 628 (1984).

Under the retaliatory discharge claim, defendants also allege that the trial court erred in entering a judgment of joint and several liability of the individual defendants on the basis of the jury's finding of a civil conspiracy. The joint and several liability of the individual defendants was limited to $23,000 for compensatory damages for retaliatory demotion and $500,000 for exemplary damages stemming from the retaliatory demotion. Because we vacate the jury verdict regarding the retaliatory demotion claim, we also vacate the judgment of joint and several liability.

Defendants also allege that the trial court erred in instructing the jury concerning the importance of defendants' failure to provide adequate methods of internal appeal procedures. The trial court instructed the jury:

> When an employer provides a method of review of a decision to demote an employee that policy must afford the employee the fundamental due process right of fairness and justice. The employee in such an instance is entitled to a decision in his or her appeal by an impartial decision maker. Where the decision maker sitting in review of a decision to demote was a participant in the decision to, in fact, demote, there may be evidence that these due process rights have been violated and the policy provisions which are contractual in nature have been breached.

In instructing the jury, the trial court relied on *Vander Toorn v Grand Rapids,* 132 Mich App 590; 348 NW2d 697 (1984), and *Khalifa v Henry Ford Hosp,* 156 Mich App 485; 401 NW2d 884 (1986). The court noted that its instruction was designed to inform the jury that a biased internal review is evidence of a breach of a just-cause contract, not evidence of a breach of a separate element of damages or separate theory of recovery.

We hold that the trial court erred in instructing the jury on this issue. Both the *Vander Toorn* and *Khalifa* decisions addressed the question whether a plaintiff can be precluded from pursuing a circuit court action when the plaintiff's claim was fully heard and decided according to the contract procedures for internal appeal accepted upon employment. However, these cases require that the internal review mechanisms comply with a due process right of fairness before their use can preclude future lawsuits. In the present case, defendants are not arguing that plaintiff was precluded from maintaining the present suit because he utilized the internal appeal procedure. Rather, plaintiff is asserting an additional right to an impartial review under his contract. While plaintiff's employment contract may create a contractual right to an impartial review, the trial court's focus should be on the existence of a just-cause contract and whether just cause to terminate existed. The jury cannot find that the plaintiff's employment was terminated for just cause, and yet award wrongful discharge damages because plaintiff was not afforded proper review procedures. We hold that the trial court erred in focusing plaintiff's breach of a just-cause contract action on the availability and propriety of an internal review process.

However, we conclude that the instructional

error and improper special verdict form did not result in a jury verdict that was inconsistent with substantial justice and thus does not require reversal. *Johnson v Corbett,* 423 Mich 304; 377 NW2d 713 (1985); *Willoughby v Lehrbass,* 150 Mich App 319, 336; 388 NW2d 688 (1986). From our review of the jury instructions and special verdict form, the jury verdict was not inconsistent with substantial justice. In discussing plaintiff's theory of the case, the trial court instructed the jury that plaintiff's breach of contract theory was premised on plaintiff's refusal to take action which he claims was violative of the Code of Professional Responsibility. Plaintiff's closing argument also focused on the contention that plaintiff was terminated not for cause, but because he refused to take action which was violative of the code of professional conduct. Furthermore, the jury found that plaintiff was discharged in retaliation for his failure to act in a way contrary to the code of ethics. This finding of fact is a sufficient basis for the jury's finding of a breach of a just-cause contract. Considering the manner in which the present case was presented to the jury and the jury's finding of fact, we hold that the trial court's erroneous instruction does not require reversal. The jury's conclusion that defendants breached their just-cause contract is not affected by the improper jury question and instruction. The jury verdict is not inconsistent with substantial justice.

Defendants also claim that the trial court erred in submitting the charge of intentional infliction of emotional distress to the jury, while plaintiff in his cross appeal alleges that the trial court erred in refusing to enter the judgment for intentional infliction of emotional distress because it was duplicative of the $500,000 awarded for mental anguish under the retaliatory discharge theory. We

find that the charge of intentional infliction of emotional distress does not apply to the present employment contract. Damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract. *Valentine, supra; Cirner v Tru-Valu Credit Union,* 171 Mich App 163, 171; 429 NW2d 820 (1988). Furthermore, the record in the present case does not reveal the extreme and outrageous conduct necessary to establish possible tort liability. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 602-603; 374 NW2d 905 (1985); *Cirner, supra* at 171. Thus, we hold that the trial court erred in submitting the claim of intentional infliction of emotional distress to the jury, and let stand the trial court's refusal to enter the jury verdict for intentional infliction of emotional distress.

Finally, defendants allege that the trial judge was biased and that he erred in failing to disqualify himself from the case, and that he made improper and prejudicial comments and questions during trial. First, we hold that the trial judge did not abuse his discretion in denying disqualification. An actual showing of prejudice is required before a trial judge will be disqualified. *Wayne Co Jail Inmates v Wayne Co Chief Executive Officer,* 178 Mich App 634; 444 NW2d 549 (1989). A judge is disqualified where he cannot impartially hear a case because he is an interested party. MCR 2.003(B)(1). An interest sufficient to disqualify a judge must be such an interest in the subject matter that he will be directly affected through pecuniary or property gain or loss. *Detroit Bd of Ed v Getz,* 321 Mich 676, 678; 33 NW2d 113 (1948). We hold that defendants have failed to show that the trial judge was actually biased and that the fact that the trial judge was a policyholder of

defendant insurance company is insufficient to disqualify him.

Further, we disagree with defendants' allegation that the trial court made improper and prejudicial comments and questions. After reviewing the lower court record, we conclude that the court's participation at trial did not deny defendants a fair and impartial trial by unduly influencing the jury. *King v Taylor Chrysler-Plymouth, Inc,* 184 Mich App 204, 216; 457 NW2d 42 (1990). Moreover, the trial court instructed the jury that the jury was the sole judge of the facts. Thus, defendants were not denied a fair trial.

In sum, we hold that plaintiff can maintain an action for breach of a just-cause contract on the basis of retaliatory demotion and constructive discharge stemming from his refusal to take action which would have violated the code of professional conduct. However, since the cause of action for retaliatory demotion and constructive discharge merged with the breach of contract claim, we set aside the jury verdict regarding these amounts and decline to address whether defendant can maintain a cause of action for retaliatory discharge from an employment-at-will contract. Further, we dismiss the jury award for intentional infliction of emotional distress and conspiracy. Finally, we hold that defendants were not denied a fair trial because of the trial judge's questions and comments and that the trial judge did not err in failing to disqualify himself.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.