**Patricia M. STEFFES, Plaintiff–Appellant/Cross–Appellee,**

v.

**PEPSI–COLA PERSONNEL, INC., Defendant–Appellee/Cross–Appellant.**

**Nos. 99–2185, 99–2226, 00–1376.**

United States Court of Appeals, Sixth Circuit.

Dec. 18, 2001.

---

**2.** *See* 20 C.F.R. 802.203(d)(3).

Before MOORE and COLE, Circuit Judges; FORESTER, District Judge.*

FORESTER, District Judge.

Appellant/Cross–Appellee Patricia M. Steffes ("Steffes") appeals the district court's order reducing to $114,085 a $2.6 million jury award against Defendant–Appellee/Cross–Appellant Pepsi–Cola Personnel, Inc. ("Pepsi") on her claims for "reverse" race discrimination and retaliation in violation of Michigan's Elliott–Larsen Civil Rights Act and intentional infliction of emotional distress in relation to her alleged constructive discharge from Pepsi. She also appeals the district court's denial of her motion for a new trial, the award to Pepsi of certain costs under Rule 68 of the Federal Rules of Civil Procedure, and the court's ruling that limited her recovery of attorneys' fees. In its cross-appeal, Pepsi challenges the district court's denial of its motion for judgment as a matter of law on Steffes's failure-to-promote claim and its motion for a new trial on the same claim. For the reasons stated below, we AFFIRM the rulings of the district court.

## I.

### A.

Steffes, who is Caucasian, began working for Pepsi in 1972 in Michigan in a clerical position. She worked her way up the ladder, earned a college degree at night, and by 1986 was in a managerial position. Sometime in 1995, Steffes indicated to her supervisor her interest in becoming a Market Unit Manager ("MUM"), which her supervisor agreed would be a good career path for her. She was not chosen as a MUM in 1995, but an African–American woman named Tracey Thomas Travis was appointed the MUM in Howell, Michigan, in late 1995. According to Steffes, Travis, who was a member of the Black Employees Association, had only been at Pepsi a short time and had no substantial previous sales experience.

Steffes claims that her supervisor assured her in early 1996 that she would be moving into the next open MUM position. Shortly thereafter, another African–American, Ray Bennett, was chosen for the MUM position in Lansing, Michigan. Steffes was subsequently offered the position that Bennett would be vacating, Operations Manager of Sales and Delivery, but rejected the offer because it would not have provided her with direct sales experience, which she needed to become a MUM.

According to Steffes, several "behind the scenes" events at Pepsi played into its decision to promote African–American employees instead of her. Pepsi had implemented a personnel performance measure for senior managers and top executives requiring the reduction of minority employee turnover by 25%. This accountability measure directly affected the executives' eligibility for a salary increase. Also, the Black Employees Association was a mechanism to achieve the 25% turnover reduction, "putting the heat on" Pepsi executives to increase minorities' representation in management.

Steffes filed a complaint with the Equal Employment Opportunity Commission ("EEOC") over her denial of the Lansing MUM position, claiming that it was based

---

* The Honorable Karl S. Forester, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

on race discrimination. She alleges that thereafter, she was shut out of meetings, had problems communicating with her superiors, and had the feeling she was being pushed out of the day-to-day operations at Pepsi. During the 1996 human resources planning process, Steffes's supervisor recommended that Steffes be considered for a MUM position. However, the other decision-makers, which included Travis and another employee Steffes had recently audited for internal theft and missing inventory, opposed Steffes's nomination, citing interpersonal problems with her. Steffes claims that her rejection was retaliation for having complained to the EEOC.

Steffes claims that in her next performance review in April of 1996, her development options were severely downgraded and, for the first time, she had two new areas which needed improvement: being "customer driven" and "respect for others." Steffes claims that it subsequently became clear to her that she was in trouble and that her career at Pepsi was evaporating. Pepsi offered her the position of Unit Manager in Port Huron, Michigan, which she considered to be "the sticks" and an end to her career, but which Pepsi considered to be a promotion. Shortly thereafter, Steffes began seeing a clinical psychologist and took disability leave from Pepsi.

Steffes returned to Pepsi approximately three months later. She claims that on the day she arrived, there were no assignments, notes, or directions from her supervisor. However, she did receive a memorandum from an African–American employee, Karl Sears, requesting individual meetings with Steffes and several other employees and managers. Sears wanted to meet with these employees to ensure

that he understood how their functions interfaced with the MUM's. Steffes perceived this as a memo directing her to "train" Sears, who had been named to a position that she had previously been denied (MUM). This was more than Steffes could take, so she left Pepsi and never returned. She began to see her clinical psychologist again, and her treatment lasted into early 1997. She ultimately filed suit against Pepsi.

### B.

A jury returned a verdict in Steffes's favor, finding that she had been denied a promotion because of her race and had been retaliated against for complaining about the "reverse" discrimination, in violation of Michigan state law.[1] It awarded damages as follows:

- $200,000 plus costs, attorneys' fees, and interest on her failure-to-promote claim;
- $2,000,000 plus costs, attorneys' fees, and interest on her retaliation claim; and
- $400,000 plus costs, attorneys' fees, and interest for emotional distress.

The jury also found that Steffes was *not* constructively discharged from her job at Pepsi. Judgment was entered on May 18, 1999.

Pepsi filed a motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur. On August 18, 1999, the district court granted Pepsi's motion in part, reducing the damages awarded on the failure-to-promote claim from $200,000 to $14,085 based upon the constructive discharge rule;[2] granting judgment as a matter of law in Pepsi's favor on Steffes's retaliation claim, thus eliminating the jury's award of $2,000,-

---

1. Steffes's causes of action were based on the Michigan Elliott–Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101 *et seq.*

2. The constructive discharge rule limited Steffes's damages to the date she left her employment. Steffes does not challenge this reduction on appeal.

000;[3] and remitting the emotional distress damages from $400,000 to $100,000. An amended judgment was entered on September 9, 1999. Thereafter, Steffes filed a motion for reconsideration or for a new trial, which the district court denied. This appeal and cross-appeal followed.

Subsequently, both parties moved for an award of costs and attorneys' fees—Steffes's motion was pursuant to the Elliot–Larsen Act and Pepsi's motion was pursuant to Federal Rule of Civil Procedure 68, regarding offers of judgment. The district court granted in part and denied in part Steffes's motion based on Michigan law, and granted Pepsi's motion for costs pursuant to Rule 68. Steffes was awarded a total of $115,336.21 in fees, costs, and interest, and was ordered to pay Pepsi post-"offer of judgment" costs in the amount of $9,373.21. Steffes also appeals this ruling.

## II.

### A.

Steffes argues that the district court abused its discretion in granting a remittitur on the damages awarded for emotional distress. She claims that the award was not excessive and was supported by a "mountain" of evidence regarding the retaliation to which she was subjected.

Having carefully considered the record on appeal, the briefs of the parties, and the applicable law, we are not persuaded that the district court erred in remitting the emotional distress damages from $400,000 to $100,000. Because the district court carefully analyzed the relevant factual and legal issues, the issuance of a detailed written opinion by this Court would be unnecessarily duplicative and serve no useful purpose. Accordingly, the ruling of the district court is AFFIRMED upon the reasoning of that court in its written opinions.

### B.

Steffes also appeals the district court's denial of her motion for a new trial. Steffes claims that the jury's verdict was internally inconsistent in that the award in the amount of $200,000 for lost compensation and benefits based on the failure-to-promote claim was inconsistent with the jury's finding that she was not constructively discharged. She also argues that in order for the district court to reach its result regarding Steffes's damages, it must have necessarily concluded that the jury's finding of no constructive discharge was inconsistent with the damages awarded. The district court denied Steffes's motion, which was filed more than ten (10) days after entry of the district court's original judgment entered May 18, 1999, as untimely and did not address the merits.

■ The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court. *Gafford v. General Elec. Co.*, 997 F.2d 150, 171 (6th Cir.1993). Assuming, without deciding, that Steffes's motion was timely and that she did not waive this argument below as argued by Pepsi, we find that the jury's verdict was not inconsistent.

■ As an initial matter, the district court expressly rejected Steffes's assertion that it found the jury's verdict to be inconsistent:

> Plaintiff argues that the Court, in granting Defendant's motion for judgment as a matter of law, must have concluded that the verdict form was inconsistent. The Court did not so find. Rather, the Court found that the award of damages on Plaintiff's promotion claim was *not consistent with controlling law* . . . .

(Order entered 10/1/99, Apx. at 95–96 (emphasis supplied).) Specifically, the trial

---

**3.** Steffes also does not challenge this ruling on appeal.

court determined that the jury's determination that Steffes was not constructively discharged meant that she was only entitled to damages equal to "the difference between what she would have made in the Lansing MUM job [beginning April 22, 1996] and what she did make in the operations support position which the jury found she voluntarily abandoned [on September 16, 1996]." (Order entered 8/19/99, Apx. at 499–500.) This amount equaled $14,085.

■■■■ We, too, find that the jury verdict was not internally inconsistent. The amount awarded for damages on Steffes's failure-to-promote claim is not inconsistent with the jury's finding of no constructive discharge—the latter simply provides an end-point for the damages calculation. Further, because the factual inquiries for a claim of discrimination based on failure to promote and a retaliation claim for constructive discharge[4] are different, it is not impossible to reconcile these two findings. In order to prove her failure-to-promote claim, Steffes was required to show, *inter alia*, that she applied for and was qualified for the promotion, that she was not promoted despite her qualifications, and that an African–American employee with similar qualifications was promoted. *Allen v. Comprehensive Health Servs.*, 222 Mich. App. 426, 564 N.W.2d 914 (Mich.Ct.App. 1997); *see also infra*, § 11.C. On the other hand, "[a] constructive discharge is established where 'an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.'" *Vagts v. Perry Drug Stores, Inc.*, 204 Mich.App. 481, 516 N.W.2d 102, 105 (Mich.Ct.App. 1994) (quoting *Mourad v. Automobile Club Ins. Ass'n*, 186 Mich.App. 715, 721, 465 N.W.2d 395 (1991)). These inquiries are separate and independent and, therefore, the jury's verdict was not inconsistent.

Further, the jury's finding of retaliation was not inconsistent with its finding that Steffes was not constructively discharged. Steffes alleged a number of different bases for her retaliation claim: Pepsi did not consider her for a MUM position; she was shut out of meetings and had problems with her superiors; her future development options were "downgraded"; new areas of improvement appeared for the first time; she was offered the "insulting" UM position in Port Huron; and she was allegedly constructively discharged. Although the jury expressly rejected the last basis, it could have determined that Pepsi retaliated against Steffes by its other actions.[5] Therefore, it was not inconsistent for the jury to conclude that Steffes had been retaliated against, but not constructively discharged.

### C.

On cross-appeal, Pepsi argues that the district court erred in denying its motion for judgment as a matter of law with respect to Steffes's failure-to-promote claim. Pepsi argues that Steffes herself admitted that she did not have the direct sales and sales management experience that was *the* prerequisite for the Lansing MUM posi-

---

4. As noted by one Michigan court, "constructive discharge is not in itself a cause of action.... Rather, constructive discharge is a defense against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily." *Vagts v. Perry Drug Stores, Inc.*, 204 Mich.App. 481, 516 N.W.2d 102, 104 (Mich.Ct.App.1994).

5. As mentioned previously, the district court ultimately determined that Steffes failed to prove an adverse employment action sufficient to establish her retaliation claim. Steffes does not challenge this ruling on appeal.

tion. Bennett, on the other hand, had the requisite experience. The fact that Travis, the Howell MUM, did not have direct sales experience misses the mark, because the needs of the two markets were different. Pepsi also argues that, although Steffes was not considered for the Lansing position, three other Caucasian employees with the requisite experience were considered, defeating any claim of reverse discrimination. In sum, Pepsi argues that Steffes did not get the promotion because she did not have the essential qualifications, not because of her race.

■ In this circuit, when a party challenges the sufficiency of the evidence on a certain question, "state law governs the standard for granting motions for .... judgments notwithstanding the verdict [now known as 'judgments as a matter of law']." *Morales v. American Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir.1998); *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474 (6th Cir.1991). This action is governed by Michigan law; therefore, the applicable standard of review is as follows:

> Under Michigan law, which is nearly identical to the federal standard, "a judgment as a matter of law 'may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence.'" *Id.* (quoting *Toth v. Yoder Co.*, 749 F.2d 1190, 1194 (6th Cir.1984)). In evaluating the sufficiency of the evidence, we must examine the evidence and take all legitimate inferences in the light most favorable to the non-moving party. *See Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586, 588 (Mich.1986); *Meagher v. Wayne State Univ.*, 222 Mich.App. 700, 565 N.W.2d 401, 409 (Mich.App.1997).

*Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913, 918 (6th Cir. 2000).

■ In order to state a prima facie case of "reverse" race discrimination based upon circumstantial evidence, a plaintiff must prove the following: "(i) background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against [Caucasians]; (ii) that the plaintiff applied and was qualified for an available promotion; (iii) that, despite plaintiff's qualifications, [she] was not promoted; and (iv) that [an African–American] employee of similar qualifications was promoted." *Allen v. Comprehensive Health Servs.*, 222 Mich.App. 426, 564 N.W.2d 914 (Mich.Ct.App.1997). We find that the district court did not err in denying Pepsi's motion for judgment as a matter of law on Steffes's failure-to-promote claim.

■ Steffes presented sufficient evidence from which a reasonable factfinder could conclude that she applied for and was qualified for the Lansing MUM position. The evidence presented raised a genuine issue of material fact as to whether sales experience was a requirement. Taking all legitimate inferences in the light most favorable to Steffes, it appeared from the evidence that whether a particular person was "qualified" for a MUM position was a completely subjective determination on Pepsi's part. For example, Steffes claims that she was told she needed direct sales experience to be promoted to a MUM, yet Travis was promoted to the Howell MUM position without this same experience. The person who had held the Lansing MUM position before Bennett also possessed no direct sales experience before he was hired into the position. A reasonable jury could have determined that Pepsi kept changing the rules, as alleged by Steffes, in order to promote African–American employees instead of her. Even if Steffes admitted that the qualifications changed depending on the market unit position at issue, a jury could reasonably have concluded from the evi-

dence that Pepsi's subjective determination of these qualifications was discriminatory. Further, a reasonable jury could have also concluded that Pepsi's articulated reasons for not promoting Steffes to the Lansing MUM position—that she lacked direct sales experience and needed to improve her skills in certain areas—were a pretext for discrimination.

Pepsi also argues that *Veronica Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 568 N.W.2d 64 (Mich.1997), stands for the proposition that an employer's exercise of its business judgment cannot be discriminatory. However, as noted above, where this business judgment can be exercised in a completely subjective manner— such as in determining the necessary qualifications at any given time for any given MUM position—a jury should be able to consider whether Pepsi was exercising this judgment by changing the rules of the game in order to promote and/or retain minority employees in a manner that discriminated against Caucasian employees. Therefore, the district court did not err in denying Pepsi's motion for judgment as a matter of law on Steffes's failure-to-promote claim.

### D.

Pepsi also claims on appeal that the district court abused its discretion in denying its motion for a new trial based upon the testimony of Richard Lobenthal, an expert witness called by Steffes. Specifically, Pepsi argues that Lobenthal was not qualified as an expert in the area in which he testified, his testimony lacked foundation, and it was not in the nature of expert testimony. As a result, it provoked the jury's irrational finding that Pepsi discriminated against Steffes and resulted in substantial prejudice to Pepsi on the ultimate issue of fact in the case.

Having carefully considered the record on appeal, the briefs of the parties, and the applicable law, we are not persuaded that the district court erred in permitting Lobenthal's testimony. Because the district court carefully analyzed the relevant factual and legal issues, the issuance of a detailed written opinion by this Court would be unnecessarily duplicative and serve no useful purpose. Accordingly, the ruling of the district court is AFFIRMED upon the reasoning of that court in its written opinions.

### E.

Finally, Steffes argues on appeal that the district court abused its discretion in awarding Pepsi post-"offer of judgment" costs and in limiting Steffes's recovery to pre-"offer of judgment" fees and costs. Specifically, she argues that the district court's failure to treat attorneys' fees as "damages" as opposed to "costs" under Michigan law rendered the application of the penalties provided in Federal Rule of Civil Procedure 68 inappropriate in this case.

Having carefully considered the record on appeal, the briefs of the parties, and the applicable law, we are not persuaded that the district court erred in its award of fees and costs with respect to the parties. Because the district court carefully analyzed the relevant factual and legal issues, the issuance of a detailed written opinion by this Court would be unnecessarily duplicative and serve no useful purpose. Accordingly, the ruling of the district court is AFFIRMED upon the reasoning of that court in its written opinions.

### III.

Based on the above, we AFFIRM the rulings of the district court challenged in these appeals.