# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER AMANDO MITCHELL,

        Defendant-Appellant.

UNPUBLISHED
June 15, 2017

No. 332266
Jackson Circuit Court
LC No. 15-004712-FH

Before: O'BRIEN, P.J., and HOEKSTRA and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his conviction, entered as a result of a plea agreement, of first-degree home invasion, MCL 750.110a(2) (home invasion while armed with a dangerous weapon). The trial court sentenced defendant to 10 to 20 years' imprisonment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and Angel Vidro broke into the victim's home to commit larceny. After they broke in, they discovered that the homeowner was a police officer. They then did extensive damage to the interior of the victim's home. According to the Victim Impact Statement, the extent of the destruction was "difficult to fathom." The perpetrators had "ransacked every room . . .[,] emptied drawers, tipped over furniture, emptied storage containers, ruined legal documents, broke personal items and most damaging; they smashed [a] 100 gallon fish tank [causing] damage to [the] kitchen, dining room and living room floors[;] the damage had to be treated as if it was a sewage problem due to the fish tank water contamination . . . [and] required [] the services of a restoration company who had to immediately remove the flooring in each room." A 60" television was "ripped from [the] living room wall" and stolen, along with other electronics (including a laptop, tablet, and gaming system). Also stolen were firearms with sentimental value, as well as personal memorabilia, including "police badges . . . collected with

---

[1] See *People v Mitchell*, unpublished order of the Court of Appeals, entered May 24, 2016 (Docket No. 332266).

pride from [the victim's] previous employers." The victim's fish were killed, and his "dog's gentle behavior changed," necessitating the purchase of an invisible fence.

Defendant left his cellular phone at the victim's house and returned later to retrieve it. During sentencing, defendant took responsibility, but blamed his actions on the influence of Xanax, an anti-anxiety medicine.

The sentencing guidelines were calculated at 36 to 60 months. The presentence information report (PSIR) prepared by the probation department (without the benefit of the Victim Impact Statement) recommended that defendant receive a minimum sentence at the top of the recommended range. At sentencing, the prosecution requested "the maximum possible sentence under the law," emphasizing that, in return for his plea, two additional cases involving home invasions were dismissed, as was the felony-firearm charge initially brought in the instant case. The prosecution stated:

> Two other cases were dismissed because we needed Mr. Mitchell's testimony against the co-defendant, a felony firearm was dismissed, so he's already been given considerable consideration because we wanted to bring both of these men to justice for their involvement in trashing Officer Pruss's [sic - Prus] house, but with that being said, I'm asking the court to give the maximum possible sentence under the law. This went well above and beyond what was necessary to commit a home invasion. This got personal when they discovered that this home belonged to a police officer, and, unfortunately, there seems to be a war on cops right now and this officer did nothing to this man, his family's done nothing to this man, and he was victimized above and beyond what was necessary solely because he was a police officer, and that's wrong and I'm asking the court to sentence him to the maximum possible sentence with the Michigan Department of Corrections.

The PSIR reflects that the dismissed charges in the other cases against defendant arose out of two other incidents that occurred subsequently to the home invasion in this case; the charges were larceny in a building, MCL 750.360, stealing, removing, retaining, or secreting another's financial transaction device without consent, MCL 750.157n, and second-degree home invasion, MCL 750.110a(3), all felonies. The PSIR further reflects that "[w]hen asked why the defendant continued to engage in this type of behavior, he indicated that he didn't get caught so it didn't seem like a big deal."

At sentencing, the trial court noted the extensive damage to the victim's home and called it "the worst home invasion I've ever seen in my career." The trial court also stated:

> I've never seen somebody's home so seriously desecrated as you did to this cop. You know, your family, your pastor, who I respect immensely, you know, I can't help but wonder what they would think if somebody came and did that to their home and then just try and say well, I had a couple of Xanax, I had a couple of anti-anxiety pills. I mean, you – you weren't under heroin or meth . . . and . . . I think fairly quickly on you figured out it was a cop's house and you were gonna take as much time as you could to – to – to inflict maximum destruction. Even on things like a huge aquarium, a hundred gallon aquarium. I used to have a 50

gallon one when I was in college, I could imagine how much water, just to sit there and watch all the fish and everything die on the floor, probably laughing, yeah, we're gonna get this cop, we're gonna get him good, take his guns, take his badges, go into his private room that he's proud of as a police officer, desecrate that.

The trial court then departed upward from the guidelines and sentenced defendant to a term of 10 to 20 years. This appeal followed.

## II. REASONABLENESS OF SENTENCE

Defendant argues that the trial court violated the principle of proportionality and imposed an unreasonable sentence by imposing a 10 to 20 year term of imprisonment, noting that his minimum sentence was twice the highest minimum sentence recommended by the sentencing guidelines. We disagree that the departure was unreasonable.

We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). We review the reasonableness of a sentence for an abuse of the trial court's discretion. See *People v Steanhouse*, 313 Mich App 1, 44-47; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016), quoting *People v Milbourn*, 435 Mich 630, 634-636; 461 NW2d 1 (1990). [*People v Walden*, ___ Mich App ___, ___; ___ NW2d ___ (2017), slip op at 4.] The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

In *Lockridge*, our Supreme Court determined that scoring of the mandatory sentencing guidelines by using judicial fact-finding violated a defendant's constitutional right to a jury trial as articulated in the United States Supreme Court decisions of *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000) and *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In order to render our legislative sentencing guidelines constitutional, our Supreme Court struck "down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Lockridge*, 498 Mich at 364-365. The Court held "that a guidelines minimum sentence range calculated in violation of *Apprendi* and *Alleyne* is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. at 365. The Court further noted that "to the extent that any part of MCL 769.34 or another statute refers to use of the sentencing guidelines as mandatory or refers to departures from the guidelines, that part or statute is also severed or struck down as necessary." *Id*. at 365 n 1. Finally, the Court concluded: "To preserve as much as possible the legislative intent in enacting the guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *Id*. at 365.

We recently discussed the analytical framework for a defendant's claim that his sentence is unreasonable under *Lockridge*:

With regard to defendant's claim that his sentence was substantively unreasonable, our Supreme Court in *Lockridge*, 498 Mich at 364-365, rendered the Michigan sentencing guidelines advisory. Additionally, the Court in Lockridge determined that trial courts are no longer required to articulate substantial and compelling reasons to depart from the minimum sentencing guidelines range; rather, the sentence must only be reasonable. *Id*. at 391-392. This Court has stated that a sentence is reasonable under *Lockridge* if it meets the principle of proportionality enumerated in *Milbourn*. *Steanhouse*, 313 Mich App at 22. "[T]he principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 363. Put another way, "the [trial] judge . . . must take into account the nature of the offense and the background of the offender." *Id*. at 651. As our Supreme Court has stated:

> [D]epartures [from the minimum sentencing guidelines] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing . . . . [T]rial judges may continue to depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. [*Milbourn*, 435 Mich at 656-657.]

Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense . . . , (2) factors that were inadequately considered by the guidelines . . ., and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor . . ., the defendant's misconduct while in custody . . ., the defendant's expressions of remorse . . ., and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

[*Walden*, ___ Mich App at ___, slip op at 4-5.]

Here, as in *Walden*, the trial court sentenced defendant shortly after *Lockridge* was decided by our Supreme Court, and specific reference was made to *Lockridge* at the sentencing hearing. *Id*. at 5. The court was therefore aware of the applicable reasonableness standard.

At sentencing, the trial court focused primarily on the amount of damage that defendant and Vidro did to the victim's home.[2] The record reflects that defendant committed this offense

---

[2] The trial court made repeated statements like the following: "[Y]ou're trying to tell me you're high as a kite and you absolutely destroy this cop's house"; "I mean, you guys smashed a hundred gallon aquarium"; "you ruined flooring in three different areas of the house"; "you took his police memorabilia, his uniforms, I mean, you destroyed things throughout the house"; "it translates into a very different kind of home invasion"; "this is a police officer . . . [and] the irony

while he was on probation for an earlier felony conviction for bringing contraband into a prison while employed there.[3] Defendant's probation was imposed pursuant to Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, which would have resulted in the earlier charge being dismissed had he successfully completed the probation. See MCL 762.14. Due to defendant's plea of guilty in this case, his status as a youthful trainee under HYTA was revoked. See MCL 762.12(1). The prosecution emphasized the consideration that defendant had been given for his plea agreement, including the dismissal of three felony charges that could have potentially represented decades of prison time.

"*Milbourn* did not address the unique sentencing situation that arises when a defendant pleads guilty of a lesser charge in exchange for dismissal of other or greater charges." *People v Brzezinski*, 196 Mich App 253, 256; 492 NW2d 781 (1992), citing *People v Duprey*, 186 Mich App 313, 318; 463 NW2d 240 (1990). In such a case, a trial court may appropriately emphasize the "substantial nature of the plea bargain that has been struck" in departing from the sentencing guidelines. *Id*. And "a trial court's consideration of factors not embodied in the guidelines becomes more compelling." *Id*., citing *People v Williams*, 191 Mich App 685, 687-688; 479 NW2d 36 (1991).

We conclude, as in *Walden*, that the trial court did not abuse its discretion, that the sentence imposed satisfied the requirement that a sentencing departure be "proportionate to the seriousness of the circumstances of the offense and the offender," *Milbourn*, 435 Mich at 636, and that it was therefore reasonable under *Lockridge*. In addition to being aware of the substantial nature of the plea bargain struck in this case, *Brzezinski*, 196 Mich App at 256, the trial court noted the extensive damage to the victim's personal property, apparently perpetuated on a malicious whim by defendant and Vidro. Although the degree of property damage is considered in scoring offense variable (OV 16), MCL 777.46, the trial court's comments clearly indicate the inadequate weight given to this factor. Indeed, OV 16 allows 10 points to be scored for property damage (including stolen items) in excess of $20,000 *or* if a defendant caused

---

is, his [home] gets trashed worse than any that he's ever seen in his . . . entire career"; "[Y]ou took the time, locked his dog . . . in the basement . . . [s]o you could have more uninterrupted time to totally trash this guy's house." The court also focused repeatedly on the fact that the victim was a police officer. The court's final summation before pronouncing sentence returned to the theme of the severity of the destruction and the fact that it occurred to the home of a policeman. As previously noted, after imposing a 10 to 20-year sentence, the court stated: "It's not burglary, it's home invasion in the first degree and you invaded that cop's home worse than any I've ever seen in my career."

[3] The record reflects that while employed by a private company in a correctional facility, defendant smuggled marijuana into the facility at the request of an inmate, for compensation. The record further reflects that defendant committed this offense shortly before entering a plea (but after his arrest) on a marijuana possession charge. Defendant received a suspended sentence for that possession charge as well as probation, but that probation was revoked for failing to comply with the conditions of sentence. Shortly thereafter, and despite his poor compliance with his previous probation, defendant was given another alternative to jail or prison time in the form of his probation under the Holmes Youthful Trainee Act, MCL 762.11 *et seq.*

"[w]anton and malicious damage beyond that necessary to commit the crime," for which he was not charged. MCL 777.46(1)(a)-(b). Here, defendant both caused more than $20,000 in damage and did so wantonly and maliciously. The trial court also noted defendant's conduct in returning to retrieve his cellular phone. Defendant's conduct in re-entering the victim's house likely constituted, at the least, an additional misdemeanor breaking and entering or entering without breaking, MCL 750.115, for which defendant was not charged. Additionally, defendant's conduct lends serious doubt to his suggestion that he was so intoxicated by Xanax that he could not control his behavior. And defendant had already been given special opportunities to rehabilitate and escape the burden of a criminal record by both a jail diversion program in New Jersey[4] and HYTA, but clearly did not benefit from either program. The trial court was permitted to consider defendant's lack of truthfulness and poor potential for rehabilitation in rendering its sentence. See *Walden*, ___ Mich App at ___, slip op at 4.

Considering the large amount of uncharged conduct the trial court had to consider in the instant case, we hold that the trial court did not abuse its discretion by departing from the guidelines to the extent that it did, and that the sentence was proportionate to the offense and the offender. See *Milbourn*, 435 Mich at 660, citing *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988).

## III. JUDICIAL BIAS

Defendant also argues that he is entitled to resentencing before a different judge because the trial court's comments demonstrated that the court was biased against him. We disagree. Defendant did not raise this claim in the trial court and therefore has not preserved this claim for appellate review. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2010). Review is of unpreserved claims is for plain error affecting the defendant's substantial rights. *Id*. at 597, citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To demonstrate plain error, defendant must demonstrate that (1) error occurred, (2) the error was plain, that is, clear or obvious, and (3) the error must have affected defendant's substantial rights. With respect to this third factor, defendant must demonstrate that he was prejudiced; that is, "that the error affected the outcome of the lower court proceedings." *Carines*, 460 at 763, citing *United States v Olano*, 507 US 725, 734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

"[T]he party who challenges a judge on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality." *Cain v Mich Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Our Supreme Court in *Cain* explained:

> A judge is disqualified when he cannot hear a case *impartially* pursuant to MCR 2.003(B). The court rule sets forth a list of situations that are deemed to be the equivalent of an inability to hear a case impartially. One such instance is

---

[4] The record reflects that defendant had previously pled guilty to a marijuana-related offense in New Jersey, which charge was dismissed after satisfactory completion of the terms of sentence.

-6-

when the judge "is personally biased or prejudiced for or against a party." MCR 2.003(B)(1).

MCR 2.003(B)(1) requires a showing of *actual* bias. Absent actual bias or prejudice, a judge will not be disqualified pursuant to this section. *In re Forfeiture of $1,159,420*, 194 Mich App 134, 151; 486 NW2d 326 (1992); *Mourad v Automobile Club Ins Ass'n*, 186 Mich App 715, 731; 465 NW2d 395 (1991); *Band v Livonia Associates*, 176 Mich App 95, 118; 439 NW2d 285 (1989).

Further, this Court has stated that

[t]he impact of a crime on a victim is a valid sentencing consideration. . . . We do not believe that the judge's consideration of the impact of the crime on the victim amounted to a prejudice or bias that deflected him from making a sentencing decision within considerations recognized in *People v Coles*, 417 Mich 523, 339 NW2d 440 (1983). A review of the record does not give rise to an impression of actual prejudice or bias. [*People v Jones*, 179 Mich App 339, 342-343; 445 NW2d 518 (1989).]

Additionally, this Court has stated:

Sentencing is the time for comments against felonious, antisocial behavior recounted and unraveled before the eyes of the sentencer. At that critical stage of the proceeding when penalty is levied, the law vindicated, and the grievance of society and the victim redressed, the language of punishment need not be tepid. [*People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992).]

Defendant bases his claim of judicial bias mainly on the trial court's statement after it imposed his sentence:

And, just for the Record, you had enough mental wherewithal to figure out when you got home that you left your cell phone and knew enough to get [it] back. I just wish one thing would have happened, I wish Officer Pruss [sic] would have had a [sic] opportunity to get home before you found that cell phone and been there the second time you came back. Because you know what? You might not be going to the Department of Corrections for 10 years, you might be getting buried in some cemetery, because that was a home invasion in the first degree and the worst – and the worst I've ever seen in almost 30 years.

Without question, aspects of this statement reflect a certain level of frustration by the trial court. However, considered in context, we conclude that this statement was not an expression of personal bias or animus toward defendant, but rather was an attempt by the trial court to impress on defendant, who had a history of failing to learn from his prior encounters with the legal system, the serious nature of the consequences that his actions could have had, and of the impact of his actions on the victim. *Jones*, 179 Mich App at 342. Instead of committing a simple

breaking and entering of a dwelling and stealing a few valuables, defendant and Vidro caused considerable damage. As defendant admitted, when they identified the home as belonging to a police officer, they made it a point to be as destructive as they could possibly be. The victim's statement, read by the prosecution at sentencing, states that he recognized that defendant and Vidro had maliciously destroyed his property because of his employment as a police officer; the victim was also concerned, because of the defendants' alleged gang affiliations, that he or his family might be subjected to further targeted criminal activity. The trial court's comments thus addressed the grievance of society and redress of the victim, and did not demonstrate actual bias. *Antoine*, 194 Mich App at 191.

We find defendant's reliance on *People v Scott*, 197 Mich App 28, 31; 494 NW2d 765 (1992), a case decided four years before our Supreme Court's decision in *Cain*, misplaced. In *Scott*, the defendant pled guilty to one count of delivery of less than 50 grams of cocaine in return for dismissal of another identical count, dismissal of the second offender provision of the controlled substances act, and a recommendation that the sentence not exceed 36 months. *Id*. at 29-30. At sentencing, the trial court excoriated the defendant as a crack cocaine dealer and compared the gravity of his offense to first-degree murder, rape, or armed robbery. *Id*. at 31. The court also compared the defendant's drug-dealing to Saddam Hussein's scud missile attacks. *Id*. The trial court then imposed a sentence of 15 to 40 years. *Id*. 30. The presentence report had recommended a 3½-year sentence based on the defendant's "inability to handle his substance abuse problem and apparent willingness to continually sell cocaine." *Id*. at 30. This Court stated:

> We find that the trial court overreacted by comparing defendant's crime to murder, rape, and scud missile attacks. This led to a disproportionate sentence and a violation of *Milbourn, supra*. It is the Legislature, not the trial court, that decides whether a defendant who has been convicted of one crime should be sentenced as if he had committed another and as if he had been in violation of international legal principles regarding the conduct of war. Moreover, we note that the trial court's statement that defendant was involved in the delivery of crack cocaine was not supported by the record, and was denied by defendant during the plea and sentencing proceedings. For these reasons, defendant must be resentenced. [*Id*. at 31.]

Additionally, because of the trial court's strong language, this Court directed that the resentencing be before a different judge. *Id*. at 33.

Unlike *Scott*, the trial court's comments in this case did not compare defendant's crimes to other, more serious offenses; instead the court properly recognized that this was the most serious example of a home invasion it had ever seen. Furthermore, *Scott* was decided four years before our Supreme Court's decision in *Cain* and therefore failed to take into account that decision's clear statements that judicial impartiality is strongly presumed and that *actual* bias

must be shown. *Cain*, 451 Mich at 495, 497. Defendant has not overcome the strong presumption of judicial impartiality or made a showing of actual bias that would require resentencing before a different judge. *Id*.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Joel P. Hoekstra
/s/ Mark T. Boonstra