HAMMOND v UNITED OF OAKLAND, INC

Docket No. 121694. Submitted August 13, 1991, at Detroit. Decided March 2, 1992, at 9:05 A.M.

John Hammond brought a wrongful discharge action in the Oakland Circuit Court against United of Oakland, Inc., and others. The court, Fred M. Mester, J., denied the defendants' motion for summary disposition of claims of breach of contract, constructive discharge, and breach of a covenant of good faith and fair dealing. The defendants appealed by leave granted.

The Court of Appeals *held:*

1. The trial court, in denying summary disposition of the claim of breach of contract, did not err in ruling that the plaintiff was not required to return the severance pay and the postemployment fringe benefits he received before bringing an action. Where an employee, upon leaving employment and in exchange for consideration, has released the employer from liability for claims arising out of the employment, the employee must return the consideration before commencing any action against the employer relating to the employment. In this case, because the severance pay and postemployment benefits received by the plaintiff were not paid as consideration for his release of the defendants from liability, the plaintiff did not have to return them in order to commence his action.

2. The trial court, in denying summary disposition of the claim of constructive discharge, did not err in ruling that there remains a genuine issue of material fact concerning whether the defendants deliberately made the plaintiff's working conditions so intolerable that he was forced into an involuntary resignation.

3. The court erred in denying summary disposition of the claim of breach of a covenant of good faith and fair dealing. A cause of action for breach of such a covenant has not been recognized in Michigan in cases involving termination of employment, regardless of whether the employment is terminable at will or only for just cause.

Affirmed in part, reversed in part, and remanded for further proceedings.

*Alan R. Miller, P.C.* (by *Stephen B. Foley*), for the plaintiff.

*Keywell & Rosenfeld* (by *Gary W. Klotz*), for the defendants.

Before: JANSEN, P.J., and SULLIVAN and MARILYN KELLY, JJ.

MARILYN KELLY, J. This is a wrongful discharge case between plaintiff, John Hammond, and his former employers, defendants United Cable Television of Oakland County and others. Defendants appeal by leave granted from a circuit court order granting in part and denying in part their motion for summary disposition.

Defendants argue on appeal that plaintiff is precluded from bringing a breach of contract action, because he failed to tender back severance benefits he received upon resigning. They further contend that the trial court erred in finding a factual issue existed over whether plaintiff was constructively discharged. Lastly, defendants argue error in the court's recognition of a cause of action for breach of a covenant of good faith and fair dealing. We affirm in part and reverse in part.

I

Plaintiff was employed by defendants from February, 1983 to April, 1986. At the time he left, plaintiff was manager of programming services.

Plaintiff alleged that, when he was hired, Jim Anderson, defendants' then-general manager, promised him that he would be a long-term employee; he would have a position with defendants as long as he did a good job. Plaintiff also alleged that defendants' employee handbook established a

policy under which he could be discharged only for just cause.

In October, 1985, Anderson was replaced by a new general manager, John Gash. Gash dismissed several managers hired by Anderson. On April 20, 1986, after hearing rumors that Gash might fire him, plaintiff asked Gash if his job was secure. According to plaintiff, Gash assured him that, because his performance was good, he would not be discharged.

However, the next day, Gash called plaintiff into his office and advised him that his position was being eliminated. Plaintiff alleged that Gash coerced him into signing a resignation document by "brandishing a knife." Plaintiff further alleged that, after he resigned, his position was not eliminated; other individuals later served as manager of programming services.

Plaintiff filed a complaint alleging multiple theories of liability including: breach of contract; breach of covenant of good faith and fair dealing; constructive discharge; discharge in violation of public policy; negligent discharge; fraud; and retaliatory discharge. The trial court granted defendants' motion for summary disposition except for the claims of breach of contract, constructive discharge and breach of covenant of good faith and fair dealing. MCR 2.116(C)(8) and (10). With respect to the good faith and fair dealing theory, the court explained:

> [A]lthough Defendant cites numerous cases holding that Michigan does not recognize such a cause of action, all those cases refer to at will employment.
>
> Thus, if Plaintiff can prove at trial that his employment was a just cause situation, he may also establish a breach of covenant of good faith and breach in the contract.

On appeal, defendants argue that the trial court should have dismissed all of plaintiff's claims. Plaintiff has not filed a cross appeal, and therefore review of the decision regarding those claims which were dismissed is not before us.

## II

Defendants assert that plaintiff's breach of contract claim should have been dismissed; plaintiff failed to rescind his resignation by tendering back the severance pay and benefits he received as consideration. We disagree.

If an employee, upon leaving a job, releases his employer from liability in exchange for consideration, he must tender back the consideration before suing the employer. *Stefanac v Cranbrook Educational Community (After Remand),* 435 Mich 155, 163; 458 NW2d 56 (1990); *Leahan v Stroh Brewery Co,* 420 Mich 108, 112; 359 NW2d 524 (1984). The employee must place the employer in the position it was in prior to the settlement. *Stefanac,* 164 (quoting *Kirl v Zinner,* 274 Mich 331, 334-335; 264 NW 391 [1936]). A plaintiff is not entitled to retain the benefit of an agreement and at the same time bring suit in contravention of it. *Id.,* 177.

For example, in *Stefanac,* the plaintiff signed a release stating that in exchange for two weeks' severance pay, she would

> fully and forever release, acquit and discharge Cranbrook, its agents, servants and representatives of and from any and all claims, demands, actions and causes of action of every kind, nature and description which Stefanac may have had, may now have or may hereafter have of any matter, cause, act or omission arising out of or in connection with Stefanac's employment with and/or resignation from Cranbrook. [*Id.,* 160.]

Since Stefanac did not tender back the severance pay prior to, or simultaneous with, the filing of her lawsuit, our Supreme Court held that her complaint was properly dismissed. *Id.,* 176-178. The other cases on which defendants rely contained similar settlement agreements releasing the employer from liability. See, e.g., *Leahan, supra,* 111; *Davis v Bronson Methodist Hosp,* 159 Mich App 251; 406 NW2d 201 (1986).

In the instant case, the document that plaintiff signed on his last day of work did not release defendants from liability. It simply provided that plaintiff was submitting his resignation and that he understood that he would receive two months' severance pay plus extended insurance benefits. It stated:

> I, John Hammond, hereby submit my resignation from United Cable Television of Oakland County, effective immediately.
>
> I understand that I will receive two months severance pay. . . .
>
> Additionally, I understand that my insurance benefits will expire on June 30, 1986.

Since there was no provision in the document releasing defendants from a potential lawsuit, there was no requirement that plaintiff tender back the severance pay before filing a lawsuit. Defendants do not contend that the money was paid in exchange for an agreement that plaintiff not sue. Therefore, defendants remain in the position they were in prior to the signing of the document. *Stefanac,* 164. Furthermore, plaintiff is not bringing an action in contravention of the document; he never agreed not to sue. *Stefanac,* 177.

### III

We also reject defendants' contention that the trial court erred in finding that a genuine issue of fact remained over whether plaintiff was construc- tively discharged. A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Mourad v Auto Club Ins Ass'n,* 186 Mich App 715, 721; 465 NW2d 395 (1991).

In the instant case, plaintiff presented an affidavit stating that, at the time Gash fired him, Gash "was agitated and brandishing a knife and told me that I had no choice but to sign the [resignation] document." He further alleged that his resignation was not voluntary. Viewing these allegations in the light most favorable to plaintiff, a juror could reasonably conclude that plaintiff was forced to resign. MCR 2.116(C)(10); *Farm Bureau Mutual Ins Co v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991); *Mourad,* 721.

At trial, defendants may introduce the resignation document and the fact that plaintiff received severance pay as evidence that he was not constructively discharged but rather resigned voluntarily. However, the fact that plaintiff received severance pay or that he never returned his severance pay does not, as a matter of law, defeat his constructive discharge claim.

### IV

We turn next to defendants' argument that plaintiff failed to state a claim for breach of the covenant of good faith and fair dealing. MCR 2.116(C)(8). Initially, we note that neither plaintiff nor defendants define this covenant. It has been

said that the covenant of good faith and fair dealing is an implied promise contained in every contract "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fortune v National Cash Register Co,* 373 Mass 96, 104; 364 NE2d 1251 (1977); see also *Dumas v Auto Club Ins Ass'n,* 437 Mich 521, 529, n 3; 473 NW2d 652 (1991), (concurring opinion by BOYLE, J.) 554-555, n 14; (dissenting opinion by LEVIN, J.) (citing *Fortune, supra*); *Aragon-Hass v Family Security Ins Services, Inc,* 231 Cal App 3d 232, 237; 282 Cal Rptr 233 (1991); *Foley v Interactive Data Corp,* 47 Cal 3d 654; 254 Cal Rptr 211; 765 P2d 373 (1988); 2 Restatement Contracts, 2d, § 205, p 99.

This Court has been unwilling to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in cases involving at-will employment relationships. See *Cockels v Int'l Business Expositions, Inc,* 159 Mich App 30, 36-37; 406 NW2d 465 (1987), and cases cited therein. Moreover, contrary to the trial court's holding, we have refused to recognize the cause of action in cases involving just cause employment relationships as well. *Dahlman v Oakland University,* 172 Mich App 502; 432 NW2d 304 (1988). Accordingly, to the extent that the trial court held that plaintiff properly stated a cause of action for breach of the covenant of good faith, we reverse. MCR 2.116(C)(8).

Although Michigan has not recognized the covenant in the employment context, an employer's attempt to injure an employee's rights may be highly relevant in a standard breach of contract case. As suggested in the seminal case of *Toussaint*

*v Blue Cross & Blue Shield of Michigan,*[1] the promise to act in good faith may be encompassed by a just cause contract:

> Where the employee has secured a promise not to be discharged except for cause, he has contracted for more than the employer's promise to act in good faith or not to be unreasonable. . . .
>
> In addition to deciding questions of fact and determining the employer's true motive for discharge, the jury should, where such a promise was made, decide whether the reason for discharge amounts to good cause: Is it the kind of thing that justifies terminating the employment relationship? Does it demonstrate that the employee was no longer doing the job?

If, in this case, it is established that a just cause employment contract existed, the jury will be required to determine what Gash's true motive was in discharging plaintiff. If the jury determines that Gash was not acting in good faith when alleging that he was eliminating plaintiff's position, plaintiff may be entitled to damages for breach of contract.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

[1] 408 Mich 579, 623; 292 NW2d 880 (1980).