# STATE OF MICHIGAN

# COURT OF APPEALS

---

UP HYDRO, LLC,

        Plaintiff/Cross Defendant-Appellee,

v

DANIEL ARTIBEE,

        Defendant/Cross Plaintiff-
        Appellant.

UNPUBLISHED
December 29, 2016


No. 329710
Alger Circuit Court
LC No. 2013-007306-CH

---

Before: MARKEY, P.J., and MURPHY and KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order granting plaintiff's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on defendant's counterclaims for breach of contract and to quiet title. We reverse and remand for further proceedings consistent with this opinion.

Defendant and his wife purchased a home and garage in Michigan's Upper Peninsula in 1988 that was situated on leased land. The land was at the time owned by the Cleveland Cliffs Iron Company. By 2002, the land had been transferred to the Upper Peninsula Power Company, from whom defendant and his wife leased three separate parcels, including the parcel on which their home and garage were located. The land and leases were transferred to plaintiff in 2010.

On May 28, 2013, defendant received a letter from plaintiff that stated as follows:

Dear Mr. Artibee:

This letter is sent on behalf of UP Hydro, LLC ("UP Hydro"), lessor under the above referenced lease or leases (whether one or more, the "Lease").

UP Hydro is prepared to offer you, pursuant to the terms and conditions of a separate offer agreement to be signed by us, the following in regard to the Lease:

      1) UP Hydro will sell you the land your home and garage occupy (subject to survey and creation of a legal description[] acceptable to both parties) for Ten thousand dollars ($10,000.00), including the old school house/VFW building located on UP Hydro's land.

-1-

Please confirm in writing to the address below before June 15, 2013 whether the above general terms are acceptable to you. If we receive notice from you on or before June 15, 2013 that these terms are acceptable to you, then we will immediately prepare and send you a form of offer for your review. If you reject these terms or fail to notify us on or before June 15, 2013, then we will assume that you have rejected these terms and will proceed accordingly with our rights under the Lease.

On June 6, 2013, defendant responded with the following handwritten letter addressed to plaintiff's representative, Tom Berutti:

Dear Mr. Berutti:

Pursuant to the terms as defined in this letter and per our personal conversation(s), I and my wife Gloria Artibee Accept said terms as stated pending survey and legal description(s) acceptable to both parties.

We eagerly await your response and action(s) so we can at last finalize our concerns over this matter.

Defendant and Berutti walked around the property with defendant, flagging the presumed boundary lines, though defendant acknowledged that Berutti informed him that that boundary was subject to the survey. Defendant also acknowledged his concern that had he later rejected the survey, "probably the contract would have been negated, but we accepted it."

Plaintiff contracted with a surveyor, who created a survey and legal description of the property that varied in some respects from where defendant and Berutti had presumed the boundary lines to exactly be when they had walked around the property. The surveyor testified that the change was necessary so that the property line would lie a certain distance from a Federal Energy Regulatory Commission (FERC) line. The surveyor testified that this move then brought one of the boundary lines very close to defendant's garage, perhaps even touching it. While defendant initially expressed his disapproval, he eventually found the survey and resulting legal descriptions acceptable.

Plaintiff, however, refused to consummate the sale, and less than a month after the survey and legal description were created, plaintiff served defendant with a notice to quit. Plaintiff sought to reclaim possession of the property under the lease agreements. Plaintiff then filed in the district court an action to recover real property. Defendant brought counterclaims for breach of contract and to quiet title. The action was then removed to circuit court, which granted plaintiff summary disposition on defendant's counterclaims, finding that no contract to sell the property had been formed because no formal purchase agreement had been created and because a mutually acceptable legal description of the property had not been obtained. The court explained that plaintiff could pursue its remedies under the lease agreements with defendant.

We review the trial court's order granting plaintiff summary disposition de novo. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. "In presenting a motion for summary disposition, the moving party has the initial burden of

supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifts to the party opposing the motion "to establish that a genuine issue of disputed fact exists." *Id.* A court deliberating on the motion considers the evidence submitted in a light most favorable to the non-moving party. *Maiden*, 461 Mich at 120. A mere pledge to establish an issue of fact at trial is insufficient to survive summary disposition under MCR 2.116(C)(10). *Id.* at 121.

The existence and interpretation of a contract are questions of law that we review de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006), citing *Bandit Industries, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001). Where a contract has been formed, it must be interpreted according to the plain and ordinary meaning of its terms. *Rory v Cont'l Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005); *Alpha Capital Mgt Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008); see also *Rory*, 473 Mich at 468.

Plaintiff's offer clearly states that it would sell defendant the land his home and garage occupy for $10,000 but conditions the offer on the conducting of a "survey and [the] creation of a legal description[] acceptable to both parties." Defendant promptly responded in writing and advised that he and his wife accept "said terms as stated pending survey and legal description(s) acceptable to both parties." The clear and unambiguous language of the writings show the parties' intent to enter a contract for the sale of the land that defendant's house and garage were on for $10,000, but only if a legal description acceptable to both parties could be created following a survey. The record shows a survey was in fact prepared that varied somewhat from the parties' understanding of where the property boundaries lay: a legal requirement pertaining to another entity in turn required that a property line be moved closer to defendant's garage.

Plaintiff argues that no binding contract ever existed between the parties because its offer stated it was "pursuant to the terms and conditions of a separate offer agreement to be signed by us." Plaintiff argues that this renders its initial offer letter and defendant's acceptance nothing more than an unenforceable agreement to negotiate. While we agree that the writings may be construed as a contract to enter into a subsequent agreement, "[a] contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract." *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 359; 320 NW2d 836 (1982). Although "a contract to make a contract can fail for indefiniteness if the trier of fact finds that it does not include an essential term to be incorporated into the final contract[,]" *id.*, "where agreement is expressed on all essential terms, the instrument is considered a contract, and is considered a mere memorial of the agreement already reached." *Hansen v Catsman*, 371 Mich 79, 82; 123 NW2d 265 (1963). The dispositive question becomes whether the writings of the parties expressed all the essential terms for a contract for the sale of land. We conclude that they did.

The material provisions for a contract for the sale of land "are the identification of (1) the property, (2) the parties, and (3) the consideration." *Zurcher v Herveat*, 238 Mich App 267, 290-291; 605 NW2d 329 (1999). It is undisputed that the writings identify the parties (plaintiff and defendant), the consideration ($10,000), and a general description of the property, i.e., "the land [defendant's] home and garage occupy." Plaintiff argues that because the writings state that the contract is subject to reaching agreement on the legal description of the land, the writings do not

identify the property. Defendant argues that the general description of the property sufficiently identifies it to form a binding contract. We agree.

A sufficient description of the property in a contract for the sale of land is one that " 'when read in the light of the circumstances of possession, ownership, situation of the parties, and their relation to each other and to the property, as they were when negotiations took place and the writing was made, . . . identifies the property.' " *Id.* at 294, quoting *Stanton v Dachille*, 186 Mich App 247, 259; 463 NW2d 479 (1990). When the parties began their negotiations and entered into written correspondence pertaining to the potential land sale, defendant had been leasing three separate parcels of property from plaintiff and plaintiff's predecessors for many years-- since 1988 when defendant and his family moved to the Upper Peninsula. Given the length of this arrangement and the specific descriptions of the property subject to each lease, we find the statement in plaintiff's offer identifying the property as "the land your home and garage occupy," as supplemented by the reference to the leases, was sufficient to identify the property.

Although the parties' writings reflect an intent to draft a contract for the sale of land subject to a condition precedent, the next inquiry is whether there was a condition precedent that failed to occur, and, if so, whether that failure was plaintiff's fault, as defendant alleges.

Liability does not attach to an agreement when it is conditioned on a future event which, through no fault of the parties, never occurs. *Opdyke*, 413 Mich at 359. But Michigan follows the rule stated in *Hayes v Beyer*, 284 Mich 60, 64-65; 278 NW 764 (1938) (citation and quotation marks omitted):

> Where a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.

"Where a party prevents the occurrence of a condition, the party, in effect, waives the performance of the condition." *Harbor Park Mkt, Inc v Gronda*, 277 Mich App 126, 131-132; 743 NW2d 585 (2007). In general, "a party must prevent the condition from occurring by either taking some affirmative action, or by refusing to take action required under the contract, before a court will find a waiver of a condition precedent." *Id.* at 132.

Moreover, in general, every contract includes an implied covenant of good faith. "It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Hammond v United of Oakland*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992) (citations omitted); see also *In re Leix Estate*, 289 Mich App 574, 586; 797 NW2d 673 (2010), and 2 Restatement Contracts, 2d, § 205, p 99 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

There is no evidence that plaintiff or plaintiff's representative, Berutti, agreed to the surveyor's legal description of the property—the surveyor that plaintiff had itself hired. Indeed, the notice to quit given to defendant indicates the opposite. Defendant argues that plaintiff's refusal to find the legal description acceptable is simply because either plaintiff or Berutti had a change of heart and no longer wanted to sell the property. The fact is that the survey plaintiff had generated described a smaller piece of property than what plaintiff and defendant initially envisioned when they walked the property. Where the only change in the parties' understanding of the property lines as a result of the survey appears to be to the disadvantage of defendant, we agree with defendant that the failure of the purported condition precedent was entirely within plaintiff's control. Plaintiff has not fulfilled its duty of good faith with respect to the parties' contract. *Hammond*, 193 Mich App at 151-152. Because plaintiff has not offered a good-faith basis for its refusal to agree to the survey-generated property description, we hold that plaintiff has no basis to invoke this condition precedent of agreement on a survey-generated property description to nix the agreed upon sale of the property. *Hayes*, 284 Mich at 64-65; *Harbor Park Mkt*, 277 Mich App at 131-132. Defendant has a legal, binding contract for the sale of the property on which defendant's home and garage are situated as described in the survey prepared pursuant to the parties' agreement.

We reverse and remand for further proceedings consistent with this opinion. As the prevailing party, Defendant may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Amy Ronayne Krause