*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHRYN L. KIRCHER,

Plaintiff-Appellee,

v

BOYNE USA, INC., and STEPHEN KIRCHER,

Defendants-Appellants,

and

JOHN E. KIRCHER and AMY KIRCHER WRIGHT,

Defendants.

FOR PUBLICATION
November 2, 2023
9:00 a.m.

No. 360821
Emmet Circuit Court
LC No. 20-107011-CK

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

SHAPIRO, J.

Defendants-appellants, Boyne USA, Inc., and Stephen Kircher,[1] appeal by leave granted[2] the trial court's order denying defendants' motion for summary disposition under MCR 2.116(C)(7) (release) and (C)(8) (failure to state a claim). We affirm.

---

[1] Defendants John Kircher and Amy Kircher Wright are not parties to this appeal. We will refer to Boyne USA and Stephen Kircher collectively as "defendants."

[2] *Kircher v Boyne USA, Inc*, unpublished order of the Court of Appeals, entered October 3, 2022 (Docket No. 360821).

# I. BACKGROUND

Plaintiff Kathryn Kircher is a shareholder in defendant Boyne USA, Inc., a family-run ski business that was started by plaintiff's late father, Everett Kircher. Currently, plaintiff's brother, defendant Stephen Kircher, is the majority shareholder and CEO of the company.

Plaintiff worked for Boyne USA for many years, and the majority of her net worth came from her stock shares in the company. The family operated the business without issue for many years, but, beginning in 2010, disagreements arose. Defendants terminated plaintiff's employment in 2012, which led to a lawsuit and a May 7, 2014 settlement agreement (the 2014 settlement), which is central to this appeal. The 2014 settlement contained a provision that gave plaintiff the right to redeem her shares of stock in the company:

> Beginning in 2014 and through 2017, Plaintiff may redeem additional shares in each year, not to exceed $250,000 in value as determined in accordance with Paragraph 2(c) of this Agreement, unless otherwise agreed by the Parties. Beginning in 2018 and each year thereafter, Plaintiff may redeem Plaintiff's shares not to exceed $150,000 in value as determined in accordance with Paragraph 2(c) unless otherwise agreed by the Parties and until such time as Plaintiff has redeemed all of her shares.

The valuation method set forth in Paragraph 2(c) of the 2014 settlement tied the value of plaintiff's shares to the company's earnings before interest, taxes, depreciation and amortization (EBITDA), with certain, specified adjustments. The redemption price was thus variable, depending on certain factors, and could be significantly influenced by factors such as the company's debt. The formula states that plaintiff's redemption price was to be calculated as follows:

> [(6.5 times an Average of EBITDA) minus the Total Company Debt] multiplied by 80% and then divided by the total number of outstanding shares to obtain a price per share.

The "Total Company Debt" was to be "based on the immediately preceding calendar year-end financial statements and shall include (i) Senior Debt and (ii) Subordinated Debt, but shall exclude" other various expenses.

Based on this formula, at the time of the 2014 settlement, plaintiff had several million dollars' worth of shares. This number grew in the subsequent years as Boyne USA's performance increased. Subsequent disputes about the redemption of plaintiff's shares, among other matters, resulted in additional litigation in 2016 and additional settlement agreements. In April 2019, plaintiff and Boyne USA entered into a settlement agreement that established a redemption price for plaintiff's shares for 2015-2018 as follows: (1) for 2015, $360.23/share; (2) for 2016, $324/share; (3) for 2017, $401.81/share; and (4) for 2018, $773/share. Plaintiff would continue to own over 15,000 shares of company stock after making the 2015-2018 redemptions. For 2019, the redemption price was listed as "TBD." The reason for the "TBD" designation was, according

to defendants' attorney, that Boyne USA's financial statements for 2018, which would determine the redemption price for 2019, were not yet available.[3]

As noted above, the redemption price for plaintiff's shares was set according to a formula that would result in a variable redemption price. According to plaintiff, Boyne USA had long run an "operate leased assets" business model. In 2018, however, it changed this model by purchasing, with borrowed funds, nearly $300 million in real estate and assets that it was previously leasing. This transaction had the effect of greatly increasing the company's "total debt" under the redemption price formula. Because plaintiff's redemption price was tied to Boyne USA's debt, this purchase had a profound effect on her redemption price. While the 2018 redemption price had been $773 under the formula, the formula for the 2019 redemption price, as influenced by the new debt, resulted in a negative number—negative $2,164.94 per share.

In 2020, plaintiff brought the present action against defendants. Relevant to this appeal, plaintiff alleged that defendants breached the 2014 settlement by entering into the 2018 real estate transaction that significantly added to Boyne USA's debt. Under the existing redemption price formula, the new debt obligations effectively eliminated plaintiff's right to redeem shares and made her shares worthless. Further, plaintiff alleged that defendants refused to agree to an alternative method to calculate the redemption price, as permitted by the 2014 settlement. Plaintiff concluded that defendants acted in bad faith by destroying the value of her shares.

Defendants moved for summary disposition of plaintiff's breach-of-contract claim under MCR 2.116(C)(8), arguing that the 2014 settlement did not limit Boyne USA's ability to acquire assets or incur debt. Although the trial court agreed with this contention, the trial court believed there were questions of fact regarding whether plaintiff could succeed on a theory of the implied covenant of good faith and fair dealing. Accordingly, it declined to grant summary disposition on the basis of this argument. Defendants alternatively argued that an August 2019 settlement agreement between the parties contained a release or waiver provision that barred plaintiff's claims under MCR 2.116(C)(7). The trial court disagreed with this position as well. On appeal, defendants raise the same two positions raised in the trial court.

II. ANALYSIS

A. BREACH OF CONTRACT—IMPLIED DUTY OF GOOD FAITH

Defendants argue that the trial court erred by not granting summary disposition of plaintiff's breach-of-contract claim. We disagree.[4]

---

[3] In a separate action, plaintiff is seeking relief from judgment in the 2016 case on the basis that defendants and their attorneys misrepresented the availability of the 2018 financial information that would be used to calculate the 2019 redemption price.

[4] We review de novo motions for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted pursuant to MCR 2.116(C)(8) when the opposing party fails to state a claim upon which relief can be granted. Such a motion

-3-

"The covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[5] *Hammond v United of Oakland, Inc*, 193 Mich App 152; 483 NW2d 652 (1992) (quotation marks and citation omitted). It is well settled that, as a general rule, "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing[.]" *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003). However, we clarified in *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133; 839 NW2d 223 (2013), that what Michigan does not recognize is a *separate* or *independent* cause of action for breach of the obligation of good faith: "The obligation of good faith is not an independent duty, but rather a modifier that requires a subject to modify. It is a principle by which contractual obligations . . . are to be measured and judged." Accordingly, in order to maintain a breach-of-contract claim on the basis of the implied duty of good faith and fair dealing, there must be some underlying contractual term to which the duty can apply. See also *id*. at 134 ("The obligation of good faith has no application apart from some other contractual obligation . . . .").

*Gorman*'s explanation is consistent with our caselaw recognizing a cause of action based on the implied duty of good faith when a party exercises its discretionary powers under a contract. See, e.g., *Ferrell v Vic Tanny Int'l, Inc*, 137 Mich App 238, 243; 357 NW2d 669 (1984) ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith.") (quotation marks and citation omitted). In these cases, the plaintiffs brought breach-of-contract claims based on an alleged bad-faith exercise of discretionary authority conferred on the defendant by the contract. See *Ferrell*, 137 Mich App at 243 (affirming dismissal of the breach-of-contract claim where the undisputed facts showed that the defendant health club promulgated a dress code in good faith); *Sims v Buena Vista Sch Dist*, 138 Mich App 426, 431; 360 NW2d 211 (1984) (holding that the defendant school district breached the duty of good faith and the underlying collective-bargaining agreement by failing to exercise its discretion to continue life insurance coverage for a laid-off employee); *Burkhardt v City Nat'l Bank of Detroit*, 57 Mich App 649, 651-652; 226 NW2d 678 (1975) (affirming dismissal of the breach-of-contract claim and holding that the defendant bank exercised good faith in estimating amounts of the plaintiff mortgagors' required monthly contributions to pay insurance and taxes).[6] Based on the above caselaw, we conclude that

---

"tests the legal sufficiency of the claim on the basis of the pleadings alone . . . ." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). When reviewing the motion, the trial "court must accept as true all factual allegations contained in the complaint." *Id*. The trial court must grant the motion "if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted). The 2014 settlement was attached to the complaint, thus making it part of the pleadings. See *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

[5] "Every contract has an implied duty of good faith and fair dealing." *MSSC, Inc v Airboss Flexible Prod Co*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 163523); slip op at 17.

[6] While opinions issued by this Court before November 1, 1990, are not binding precedent, "they are nevertheless considered to be precedent and entitled to significantly greater deference than are

-4-

when a contract confers discretion on a party, a breach-of-contract action will lie for an alleged bad-faith exercise of that discretion.

Turning to the present case, we agree with plaintiff that she has sufficiently stated a breach-of-contract claim on the basis of defendants' alleged bad-faith decision to not utilize a different formula to calculate her redemption price.[7] The 2014 settlement permitted the parties to agree to a different formula:

> Beginning in 2018 and each year thereafter, Plaintiff may redeem Plaintiff's shares not to exceed $150,000 in value as determined in accordance with Paragraph 2(c) *unless otherwise agreed by the Parties* and until such time as Plaintiff has redeemed all of her shares. [Emphasis added.]

Thus, the 2014 settlement expressly conferred discretion on defendants to agree to an alternative method to calculate plaintiff's redemption price. This is a type of discretionary authority on which a breach-of-contract action may be based.

Further, plaintiff sufficiently alleges that defendants acted in bad faith. The 2014 settlement shows the parties contemplated that plaintiff would be able to "redeem all of her shares." But, even though the existing formula to determine the redemption price had been rendered obsolete, defendant declined to adopt a different formula, thereby destroying the benefit to plaintiff of the 2014 settlement. Again, the duty of good faith and fair dealing protects a party's right to receive the "fruits of the contract." *Hammond*, 193 Mich App at 152 (quotation marks and citation omitted). See also Restatement Contracts, 2d, § 205, comment a, p 100 ("Good faith performance . . . emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party[.]"). Here, plaintiff's reasonable expectation that she would be able to redeem her shares had been frustrated, yet defendants refused to consider an alternative method to calculate the redemption price, as expressly permitted by the 2014 settlement. Under the alleged circumstances, plaintiff has stated a cognizable breach-of-contract claim.

For these reasons, we affirm the trial court's decision to deny summary disposition of the breach-of-contract claim under MC 2.116(C)(8).

---

unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

[7] We disagree with plaintiff that she has stated a cognizable breach-of-contract claim with respect to defendants' decision to acquire significant debt in 2018. The 2014 settlement does not contain any specifications or restrictions on Boyne USA's ability to take on debt. And, aside from the authority to agree to use a different formula, the agreement does not leave anything to defendants' discretion regarding the share price. Accordingly, as to the increased debt, there is no underlying contractual term to which the implied duty of good faith and fair dealing applies.

## B. AUGUST 2019 SETTLEMENT

Defendants also argue that the trial court erred by denying summary disposition under MCR 2.116(C)(7) because of release or waiver. We disagree.[8]

"A release of liability is valid if it is fairly and knowingly made. The scope of a release is governed by the intent of the parties as it is expressed in the release." *Xu v Gay*, 257 Mich App 263, 272; 668 NW2d 166 (2003) (quotation marks and citation omitted). Although explicit words such as "waiver" or "disclaim" are not needed "to create a release," this Court has stated "that, at a minimum, a release should explicitly inform the reader regarding the effect of the release." *Id*. at 275 (quotation marks omitted).

As noted, in April 2019, plaintiff and Boyne USA entered into a settlement agreement (the April 2019 settlement) that established a redemption price for plaintiff's shares for 2015-2018. However, for 2019, the share price was listed as "TBD," i.e., to be determined. The parties entered into an additional settlement in August 2019 (the August 2019 settlement); this additional settlement arose from claims asserted by plaintiff's mother, Lois Kircher, and the Lois Kircher Trust. Plaintiff, as well as defendants, were listed as parties to the settlement agreement. The August 2019 settlement referenced the April 2019 settlement and plaintiff's claim for compensation and stock redemptions. Paragraph 3 provided:

> By signing this agreement, [plaintiff] represents and acknowledges that she has received her compensation as set forth in the Supplemental Agreement dated April 17, 2019 for the 2014 through 2019 redemptions, and *that at the present tim*e, *she has no claims, causes of action, demands for arbitration, or disputes of any kind* against Stephen Kircher, Amy Kircher Wright, and/or Boyne USA, Inc., and that up to the date of this document, Boyne USA, Inc., Stephen Kircher, and Amy Kircher Wright have fulfilled their obligations to her, including but not limited to the manner and form that the redemptions were made in the April 17, 2019 Agreement. [Emphasis added.]

---

[8] A motion is properly granted pursuant to MCR 2.116(C)(7) when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release . . . ." "The interpretation of a release presents a question of law that this Court reviews de novo." *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013). As previously explained by this Court,

> [i]n reviewing a motion under MCR 2.116(C)(7), this Court accepts as true the plaintiff's well-pleaded allegations, construing them in the plaintiff's favor. We must consider affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties when determining whether a genuine issue of material fact exists. [*Hanley v Mazda Motor Corp*, 239 Mich App 596, 600; 609 NW2d 203 (2000) (citations omitted).]

The trial court correctly concluded that this provision was not an unambiguous release or waiver of the breach-of-contract claim pleaded in the instant case. The August 2019 settlement provided that plaintiff had no *current* claims, causes of action, or disputes against defendants. But there is no language explicitly using words such as "released," "discharged," or "waived," nor is there language discussing the full effects of the provision. See *Xu*, 257 Mich App at 275. In other words, although there is an acknowledgment plaintiff had no *current* claims against defendants, there is no language showing that plaintiff released, discharged, or waived all such *future* claims. By contrast, the parties' April 2019 settlement used such explicit language, noting that plaintiff "expressly *waives and releases* any claims of appeal she might have . . . ." (Emphasis added). Therefore, the parties were aware of such language but chose not to incorporate it in the later settlement agreement.

The August 2019 settlement references the April 2019 settlement and declares that defendants fulfilled all of their obligations to plaintiff in the April 2019 settlement. The problem, insofar as the instant case is concerned, is that the April 2019 settlement left the strike price for 2019 as "TBD." It is not apparent from the face of the August 2019 settlement how defendants could fulfill their obligation to pay plaintiff a "TBD" amount. The "TBD" designation clearly indicated that additional documents and additional terms would be necessary. Where those terms were unknown at the time of the August 2019 settlement, plaintiff cannot be said to have knowingly waived her rights with respect to the unspecified, undefined terms.

Defendants contend that, at the time of the August 2019 settlement, plaintiff was aware of the 2018 transaction and its effect on the redemption price, which plaintiff denies. The parties' dispute on this matter only highlights the questions of fact at play and the inappropriateness of summary disposition under MCR 2.116(C)(7). Further, as clarified in this opinion, plaintiff has asserted a breach-of-contract claim as to defendants' refusal to use an alternative method for calculating the redemption price. And there is simply no indication in the record that this had occurred at the time of the August 2019 settlement. Accordingly, the specific claim on which plaintiff's complaint may proceed did not exist when the August 2019 settlement was executed.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Christopher P. Yates