*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BASRAH CUSTOM DESIGN, INC., and WEAAM
NOCHA, also known as WEAAM DAWOOD,

UNPUBLISHED
October 08, 2024
12:04 PM

Plaintiffs-Appellants,

v

No. 363542
Wayne Circuit Court
LC No. 19-016861-CB

HUNTINGTON NATIONAL BANK,

Defendant-Appellee.

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

This case represents a battle between delinquent debtors and their creditor. Weaam Dawood (also known as Weaam Nocha) (Dawood) and his cabinet-design business, Basrah Custom Design, Inc. (Basrah), borrowed $625,000 from the predecessor-in-interest to defendant, Huntington National Bank (Huntington), between 2000 and 2005. The indebtedness was secured with mortgages over commercial properties housing the business. After a 2013 default, the parties entered a settlement agreement. Dawood and Basrah (collectively plaintiffs) then tried to improve their financial outlook by entering the medical marijuana business. Plaintiffs leased the property to MJCC 8 Mile (MJCC), who renovated one building for a dispensary. Between 2015 and 2019, MJCC attempted to purchase the property as permitted in the lease, while plaintiffs sought to either sell the property to a higher bidder or begin their own medical marijuana business. MJCC filed suit against plaintiffs and the court ordered plaintiffs to sell the property to MJCC for the amount set in the lease's option to purchase. Plaintiffs attempted to avoid the forced sale by Basrah filing for bankruptcy, but its petition was dismissed.

In the midst of these actions, plaintiffs filed the current suit against Huntington, seeking a declaratory judgment of its rights and obligations and raising claims of breach of contract and tortious interference with a business expectancy. Plaintiffs blamed Huntington for their failures, claiming the bank wanted plaintiffs to default so it could foreclose on the property and benefit from its newly increased value. The trial court summarily dismissed plaintiffs' claims. Although the trial court erred in finding the tortious-interference claim was time-barred as a matter of law, the court otherwise properly determined that plaintiffs failed to create genuine issues of material

-1-

fact to be placed before a jury. Specifically, plaintiffs defaulted on the settlement agreement when Basrah filed its bankruptcy petition. Although Huntington failed to notify plaintiffs before it declared a default, the failure to meet this condition precedent did not give rise to a separate breach-of-contract action. Further, plaintiffs contended Huntington tortiously interfered with their attempt to either sell the property to or partner with an unidentified third party by refusing to provide a loan payoff amount. However, plaintiffs presented absolutely no evidence to support its claim. With clear evidence of plaintiffs' default, which triggered plaintiffs' obligation to repay the entire amount of indebtedness under the original notes, plaintiffs were not entitled to a declaratory judgment. We affirm.

## I. FACTS AND PROCEEDINGS

Dawood, as Basrah's sole owner, executed four promissory notes on Basrah's behalf with Fidelity Bank in 2000, 2004, and 2005, for a total principal indebtedness of $625,000. These notes were secured by mortgages on Dawood's commercial property on Eight Mile Road in Detroit (the subject property),[1] and by commercial guaranties pledging plaintiffs' assets as collateral. In 2012, Fidelity's interests in the notes, mortgages, and guaranties were assigned to Huntington. In 2013, plaintiffs fell behind on their payments and defaulted on the loan agreements. Huntington brought suit against them for breach of contract. In 2015, plaintiffs and Huntington entered into a settlement agreement setting a schedule of installment payments. The agreement entitled Huntington to pursue all legal remedies to collect the full amount of indebtedness, not just the settlement amount, if plaintiffs again defaulted. Default was defined to include either Basrah or Dawood filing a bankruptcy petition. The agreement required Huntington to notify plaintiffs of a default before pursuing legal action.

In 2016, plaintiffs leased the subject property to MJCC, to operate a medical marijuana dispensary. The lease included an option to purchase, which was renegotiated for $1.2 million. In the amended complaint, plaintiffs alleged that in 2016 and 2017, they requested the settlement agreement payoff amount from Huntington because they had a potential buyer for the subject property. Plaintiffs later claimed this sale was not connected to MJCC's option to purchase, but rather to unnamed individuals who either wanted to purchase the property or to partner with Dawood and his son to open their own medical marijuana business "that would have netted the family hundreds of thousands (or millions) of dollars." According to plaintiffs, Huntington sent an agent to the property, who saw its modifications for use as a medical marijuana dispensary and realized the property's value had significantly increased.[2] Plaintiffs accused Huntington of purposely causing them to default on the settlement agreement by refusing to provide a payoff

---

[1] Plaintiffs own two or three neighboring parcels. The distinction between the properties is irrelevant in this appeal.

[2] Plaintiffs never cited an exact date for this inspection. In response to Huntington's summary disposition motion, plaintiffs indicated that they began contacting Huntington for a payoff amount in 2016. "Bank then sent a representative to inspect the Collateral," and learned about the renovations.

amount necessary to close the sale, so the bank could seize the subject property and benefit from its increased value.

Plaintiffs and MJCC disputed several matters relating to the lease and option to purchase. MJCC brought suit against plaintiffs in 2017 in Wayne Circuit Court, Docket No. 17-001633-CB. The case proceeded to a bench trial in spring 2018, which culminated in a judgment for MJCC. As later noted by the bankruptcy court, the trial court found in the MJCC suit "that the efforts by" the current plaintiffs and other Dawood family members "to avoid enforcement of the" option to purchase "were motivated by a desire to make more money" by selling this unique property for a higher price to another medical marijuana dispensary operator or to operate their own dispensary. MJCC was granted a choice of remedies: either enforcement of the option to purchase or monetary damages. MJCC chose to purchase the property. This Court affirmed the trial court's decision. *MJCC 8 Mile, LLC v Basrah Custom Design Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 28, 2022 (Docket Nos. 346969 and 357238), and the Supreme Court denied leave to appeal. *MJCC 8 Mile, LLC v Basrah Custom Design Inc*, 510 Mich 1069 (2022).

After the MJCC judgment was entered, and while that appeal was pending, Basrah filed for Chapter 11 bankruptcy. Huntington filed a notice of claim in the bankruptcy proceedings for the full amount of plaintiffs' indebtedness in December 2018. Basrah's bankruptcy petition was subsequently dismissed because the subject property housed a medical marijuana dispensary, a use prohibited under federal law. The MJCC suit was administratively stayed while the bankruptcy petition was pending. After the stay was lifted, the trial court appointed a receiver, who successfully moved to distribute the proceeds from the property sale to an escrow account. Huntington intervened in the MJCC action in January 2020, to assert its priority interest in the sale proceeds. The receiver agreed with Huntington's position.

In the interim, in 2019, plaintiffs brought this action against Huntington for breach of contract, tortious interference with a business expectancy, and a declaratory judgment. Plaintiffs contended their outstanding indebtedness to Huntington under the settlement agreement, if any remained, was no more than $50,000. Plaintiffs alleged Huntington breached the settlement agreement by wrongfully declaring plaintiffs to be in default and by pursuing remedies for the default without first giving them notice. Plaintiffs further alleged Huntington breached the settlement agreement and interfered with their attempt to sell the subject property by failing to respond to plaintiffs' requests for a payoff amount for the settlement agreement.

Huntington moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiffs could not establish a genuine issue of material fact in support of the breach-of-contract or tortious-interference claims, and therefore were not entitled to a declaratory judgment, and under (C)(7), asserting that the tortious-interference claim was filed beyond the three-year limitations period. The trial court dismissed plaintiffs' claims on both grounds and subsequently denied plaintiffs' motion for reconsideration.

Plaintiffs now appeal as of right.

## II. BREACH OF CONTRACT

Plaintiffs assert that Huntington breached the settlement agreement by failing to give notice of default before seeking remedies against plaintiffs, and also by failing to provide a payoff amount when requested.

We review de novo a circuit court's resolution of a summary disposition motion. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). This "means that we review the legal issue independently, without required deference to the courts below." *Id.* A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). Summary disposition is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

We also review de novo underlying issues of contract interpretation. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). "The primary rule in contract interpretation is to ascertain the parties' intent. If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Gurski v Motorists Mut Ins Co*, 321 Mich App 657, 666; 910 NW2d 385 (2017) (quotation marks and citations omitted). "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

### A. FAILURE TO GIVE NOTICE

The settlement agreement enumerated events that would constitute a default, including either plaintiff "fil[ing] for bankruptcy under any Chapter of the United States Bankruptcy Code." In the event of a default, the agreement provided plaintiffs would be liable "for the entire indebtedness under the Notes," not just under the settlement agreement, offset by payments made toward the settlement agreement. There is no question that Basrah defaulted by filing for Chapter 11 bankruptcy.

However, the settlement agreement also included the following notice provision:

> 4. **NOTICE OF DEFAULT.** Upon the occurrence of an Event of Default as herein set forth, Bank shall not be entitled to proceed on any remedy (legal or equitable) *until and unless Bank first provides written notice of such Default* sent to Borrower and Dawood via Certified Mail and First Class Mail at the addresses provided above and to Counsel for the Borrower and Dawood via First Class Regular mail (or such alternate address that Borrower and/or Dawood may provide to Bank) which shall notify Borrower and Dawood of the alleged Default

and which shall give Borrower and Dawood fifteen (15) days to cure such Default. In the event that Borrower and/or Dawood fail to cure a default within fifteen (15) days following written notice, Bank may execute any of the available remedies outlined in this Agreement without further notice to Borrower and/or Dawood. [Emphasis added.]

There also is no question that Huntington did not provide this notice of default.

Plaintiffs argue that giving notice was a condition precedent to Huntington filing the notice of claim in the bankruptcy action and the motion to intervene in the MJCC action, as both amounted to "proceed[ings] on any remedy (legal or equitable)" without providing notice. Significantly, plaintiffs do not assert the notice provision directly as a defense to an action by Huntington to collect payment.

"A condition precedent is a fact or event that the parties intend must take place before there is a right to performance." *Mikonczyk v Detroit Newspapers, Inc*, 238 Mich App 347, 350; 605 NW2d 360 (1999) (quotation marks and citation omitted). A condition precedent is not a separate duty or right in a contract; a breach-of-contract claim cannot arise from its violation standing alone. Rather, the condition precedent limits or modifies the parties' right to performance or duty of performance. If the condition precedent does not occur, the parties' contractual rights and duties are not triggered. *Id*. Under these principles, Huntington's obligation to give notice of default was not a "duty in itself," but a limitation upon Huntington's right to pursue a remedy against plaintiffs. Plaintiffs cannot assert a valid claim of breach of contract based on lack of notice; plaintiffs can only defend against an action to force their performance or to seek a remedy for their breach.

As noted, plaintiffs challenge Huntington's right to file a notice of claim in the bankruptcy action as it did not first provide a notice of default as required in the settlement agreement. Plaintiffs did not raise this defense to Huntington's claim in the bankruptcy court. Basrah's bankruptcy petition was dismissed and it is unclear whether there was time for plaintiffs to raise the defense before the dismissal. Viewing the matter in the light most favorable to plaintiffs as the nonmoving parties, we will proceed as if there was no opportunity in the bankruptcy court for plaintiffs to argue that Huntington's notice of claim was invalid for failure to comply with the settlement agreement's notice provision.

Plaintiffs had another opportunity to raise this issue in the MJCC suit after Huntington's intervention to challenge the bank's right to distribution of sale proceeds. We do not have the full record from the MJCC suit. On the record provided to this Court, however, it appears plaintiffs chose not to raise the failure-of-notice defense. "Res judicata bars a second action on the same claim if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, *or could have been, resolved in the first*." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282-283; 983 NW2d 401 (2022) (quotation marks and citations omitted, emphasis added).

According to the Wayne Circuit Court website, the MJCC action was settled and officially closed in June 2023. Therefore, a final decision has been reached and the matter was decided on the merits. Basrah and Dawood were both parties in the MJCC action, and Huntington became a

party when it intervened. Huntington intervened to establish priority for distribution of the proceeds from the sale of the subject property by the current plaintiffs to MJCC. Plaintiffs could have challenged Huntington's position by claiming Huntington's breach of the notice provision precluded its recovery. Plaintiffs did not and are now barred by the doctrine of res judicata from raising it in the current matter. Ultimately, the trial court properly rejected this argument and granted summary disposition.

## B. FAILURE TO PROVIDE PAYOFF LETTER

Plaintiffs also argue that Huntington breached the settlement agreement by failing to respond to their requests for a payoff amount. The settlement agreement does not specifically require Huntington to provide a payoff amount on demand. Plaintiffs characterize this failure as obstructing their right to satisfy their indebtedness in full ahead of the settlement agreement schedule. According to plaintiffs, Huntington's "refusal" to provide the payoff amount violated the implied promise to avoid any action that would harm the other party.

"It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992) (quotation marks and citation omitted). "However, Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 501; 892 NW2d 467 (2016) (quotation marks and citation omitted). In *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 132-133; 839 NW2d 223 (2013), this Court likewise held that "Michigan does not recognize . . . an independent cause of action for a breach of the obligation of good faith . . ." in either common law or under the Uniform Commercial Code (UCC). "The obligation of good faith is not an independent duty, but rather a modifier that requires a subject to modify." *Id*. at 133. "It is a principle by which contractual obligations or other statutory duties are to be measured and judged." *Id*. "Thus, while the obligation of good faith under the UCC may affect the construction and application of UCC provisions governing particular commercial transactions in various situations, it has no life of its own that may be enforced by an independent cause of action." *Id*.

Contrary to plaintiffs' contention on appeal, *Hammond*, 193 Mich App 146, does not create a cause of action for the breach of the implied promise that neither party will harm the other or prevent the other from benefiting from the contract. In *Hammond*, the plaintiff argued that the defendant's termination of his employment amounted to a breach of contract and a "breach of [the] covenant of good faith and fair dealing." *Id*. at 148. This Court acknowledged precedent defining "the covenant of good faith and fair dealing" as "an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id*. at 152 (quotation marks and citations omitted). But, this Court continued, Michigan courts had "been unwilling to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in cases involving" both at-will and just-cause employment relationships. *Id*. Instead, at least "in the employment context," a breach of the implied covenant of good faith and fair dealing is relevant in assessing whether the defendant breached contractual provisions. For example, a breach of the implied covenant is

evidence of the employer's true motive for terminating an employee, countering the employer's claimed just cause for termination. *Id.* at 152-153. *Hammond* did not broadly recognize a valid cause of action for breach of an implied covenant of good faith and fair dealing.

In any event, plaintiffs have not established a genuine issue of fact that Huntington refused to provide a payoff amount. Plaintiffs pasted into their complaint and summary disposition response one e-mail from Huntington's agent, Gary P. Rusch, to plaintiffs' counsel on January 13, 2017. Rusch asked when Dawood expected the payoff to occur, explaining Huntington "can only go out 1 week on payoff letters." Rusch noted it could issue a second letter if necessary. He wrote, "Expect to have the letter's [sic] Tuesday for [Dawood's] review." Huntington thereby notified plaintiffs that it would provide a payoff letter, but warned it would be valid for only one week. Huntington further explained it would have to issue an updated letter if the proposed sale did not close within seven days. Although plaintiffs alleged that Rusch refused to provide payoff amounts month after month, they offered no evidence to support this claim, such as affidavits from the parties who orally communicated with Rusch or copies of written or electronic communications on the topic.[3] A party may not rest on its allegations in the face of a summary disposition motion; it must present some evidence to support the elements of its claim. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 9; 890 NW2d 344 (2016); *Maiden*, 461 Mich at 120. Accordingly, the trial court did not err in summarily dismissing plaintiffs' breach-of-contract claim for failure to provide a payoff amount.

### III. TORTIOUS INTERFERENCE

The trial court dismissed plaintiffs' claim for tortious interference with a business expectancy on grounds that it was untimely and that plaintiffs failed to offer evidentiary proof of the elements of this tort. Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by the statute of limitations. Similar to a motion raised under MCR 2.116(C)(10), in relation to a (C)(7) motion, "[t]he reviewing court must view the pleadings and supporting evidence in the light most favorable to the nonmoving party" to determine whether the claim is barred by the statute of limitations. *Kincaid v Cardwell*, 300 Mich App 513, 522-523; 834 NW2d 122 (2013). "In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo." *Magee v DaimlerChrysler Corp*, 472 Mich 108, 111; 693 NW2d 166 (2005).

### A. STATUTE OF LIMITATIONS

Claims of tortious interference with a business expectancy are subject to a three-year statute of limitations. *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 253; 673 NW2d 805 (2003); MCL 600.5805(2). "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." MCL 600.5827. Unless otherwise provided by statute, a claim "accrues at the time the wrong upon which the claim is based was done regardless of the

---

[3] Contrary to plaintiffs' insistence, deposing Rusch was not the only method to support its claim. The trial court's rejection of plaintiffs' request to conduct depositions before the court ruled on the summary disposition motion was therefore harmless.

time when damage results." *Id*. As a general rule, a claim does not accrue until "all of the elements of the cause of action have occurred and can be alleged in a proper complaint." *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 336; 999 NW2d 423 (2023) (quotation marks and citation omitted). The elements of tortious interference with a business expectancy are:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff. [*Hope Network Rehab Servs v Mich Catastrophic Claims Ass'n*, 342 Mich App 236, 245-246; 994 NW2d 873 (2022) (quotation marks and citations omitted).]

In response to interrogatories, plaintiffs asserted that Dawood's wife requested payoff amounts between December 2015 and sometime in 2017. Plaintiffs further contended that Dawood personally sought this information between August 2017 and January 2018. In the interim, MJCC filed suit against the current plaintiffs for failure to follow through with and close on the sale of the property in January 2017. Plaintiffs filed the current action against Huntington on December 16, 2019. To be timely raised, the tortious-interference claim must have accrued no later than December 16, 2016.

There is a strong argument that plaintiffs' claim against Huntington did not accrue until Huntington inspected the fully remodeled property and realized its potential increased value, giving it the necessary information to form the intent to interfere with the sale. According to *MJCC 8 Mile*, unpub op at 2, the building's interior was demolished in "early 2016" to prepare for reconstruction. We cannot ascertain from *MJCC 8 Mile* or from the record now before us when the remodel was completed or when the Huntington representative visited the site. As there remain questions of fact, we are not convinced that plaintiffs' tortious-interference claim was time-barred as a matter of law.

## B. GENUINE ISSUE OF MATERIAL FACT

However, the trial court properly dismissed plaintiffs' tortious-interference claim under MCR 2.116(C)(10), precluding their request for appellate relief. To establish the existence of a valid business expectancy, a plaintiff must show that the expectancy was "a reasonable likelihood or possibility and not merely wishful thinking." *Cedroni Ass'n, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc*, 492 Mich 40, 47; 821 NW2d 1 (2012) (quotation marks and citation omitted). Huntington stated in its summary disposition motion that plaintiff failed to produce a purchase agreement or correspondence to establish they had a legitimate potential purchaser. Plaintiffs responded that this argument was premature because discovery was not completed. Although a motion under MCR 2.116(C)(10) is generally premature if discovery has not been completed, summary disposition may be granted if further discovery is unlikely to support the nonmoving party's position. *Liparoto Constr v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009).

If plaintiffs' tortious-interference claim arose from MJCC's option to purchase, there would remain a question of fact. After all, Huntington intervened in the MJCC suit and could not genuinely claim ignorance. However, plaintiffs clarified in their response to Huntington's

summary disposition motion that its complaint arose from Huntington's interference with business negotiations with an unnamed third party. Plaintiffs asserted they were attempting to either sell the business to a different dispensary operator who was willing to pay more or go into the marijuana dispensary business themselves with an unidentified partner. Plaintiffs did not present a purchase offer or any other contract, or even name the potential purchaser. Plaintiffs secured no affidavits describing the alleged business dealings. Once again, plaintiffs rested on their allegations and failed to support their claim. See *Lowrey*, 500 Mich at 9; *Maiden*, 461 Mich at 120. Accordingly, plaintiffs did not create a genuine issue of material fact that a valid business expectancy existed or that Huntington knew of that expectancy. See *Hope Network Rehab Servs*, 342 Mich App at 245-246. The trial court properly dismissed the tortious-interference claim as well.

## IV. DECLARATORY JUDGMENT

Plaintiffs contend the trial court's summary disposition order was inconsistent, first asserting that the declaratory judgment count was not raised in the summary disposition motion, but then dismissing the count with prejudice.

In the first amended complaint, plaintiffs requested a judgment "declaring":

a. that the Settlement Agreement is still in force and effect and that [Huntington] never declared a Default on the Settlement Agreement; and

b. that [Dawood] paid his portion of the Settlement Agreement in full; and

c. that by refusing to allow Basrah to pay off its portion of the Settlement Agreement [Huntington] breached the Settlement Agreement; and

d. the amount, if any, that is still owed pursuant to the Settlement Agreement.

In the order granting summary disposition in Huntington's favor, the trial court initially stated: "Plaintiffs' declaratory judgment that plaintiffs have paid and only owe $50,000[] is not an issue for summary disposition as it has not been itemized in the supporting briefs." Contrary to plaintiffs' claim on appeal, this was not a blanket statement regarding the entire declaratory judgment count. Rather, the court seemingly denied the invitation to consider on the merits allegations (b) and (d), which requested declarations regarding the amount of the outstanding debt. The court accurately stated that Huntington did not directly address the allegations regarding the amount of the indebtedness in its summary disposition brief. Instead, Huntington argued plaintiffs did not create a genuine issue of material fact regarding its default of the settlement agreement. Although Huntington did not expressly make the argument, the natural result of the default was to invalidate the settlement agreement and restore plaintiffs' duty to pay the entire amount of the original indebtedness. Huntington made no argument regarding the amount remaining due and plaintiffs presented no evidence regarding the payments it had made, resting on its allegations.

Ultimately, the trial court's opinion was not internally inconsistent. The court summarily dismissed the entirety of plaintiffs' declaratory judgment count after explaining why the settlement agreement was no longer in force and effect, and why Huntington's failure to provide a payoff amount did not breach the agreement. The trial court implied it dismissed the request for a declaratory judgment about the amount of the remaining indebtedness because plaintiffs presented no evidence to support their claim. Plaintiffs do not ask us to review the substance of the trial court's order related to the declaratory judgment count and we decline to reach the issue unbidden. We discern no error in this regard.

## V. ERRONEOUS STATEMENTS BY TRIAL COURT

Interwoven throughout its appellate brief, plaintiffs challenge the accuracy of various statements made by the trial court in its opinion granting summary disposition. For example, plaintiffs contend the trial court erroneously stated that Huntington "filed to intervene in the bankruptcy" matter. While the statement was not accurate, Huntington did file a notice of claim in the bankruptcy action. It appears the trial court merely chose the wrong terminology, and this misnomer did not affect the court's opinion. Plaintiffs note the trial court stated the plural "plaintiffs" filed bankruptcy petitions, instead of just Basrah. Again, this erroneous statement does not affect the outcome as the settlement agreement indicated a bankruptcy filing by either plaintiff would amount to a default. The trial court stated, "The bankruptcy of plaintiffs was decided by the bankruptcy court," but the bankruptcy court actually dismissed the action without reaching the substantive issues. This statement, too, has no impact on the outcome of the trial court action or this appeal. After reviewing the erroneous statements cited by plaintiffs, we find nothing that affects the trial court's analysis or our analysis that Huntington was entitled to summary disposition.

We affirm.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett